ACCEPTED
01-14-00455-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/2/2015 4:15:22 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00455-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/2/2015 4:15:22 PM
CHRISTOPHER A. PRINE
Clerk

IN THE
FIRST COURT OF APPEALS
HOUSTON, TEXAS

_____

**PHILIPPE TANGUY,
13500 AIR EXPRESS, L.L.C & 13500 AIR EXPRESS, L.P.,**

*Appellant,*

**v.**

**WILLIAM G. WEST, AS CHAPTER 7 TRUSTEE OF
RICHARD DAVIS, DEBTORS**

*Appellee.*

_____

**APPELLEES' BRIEF**
_____

Joshua W. Wolfshohl
Texas Bar No. 24038592
jwolfshohl@porterhedges.com
Aaron J. Power
Texas Bar. No. 24058058
apower@porterhedges.com
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 228-1331

Eva S. Engelhart
State Bar No. 00796513
Ross, Banks, May, Cron & Cavin P.C.
2 Riverway, Suite 700
Houston, Texas 77056-1919
eengelhart@rossbanks.com
(713) 626-1200
(713) 623-6014 (fax)

**ATTORNEYS FOR APPELLEE
WILLIAM G. WEST**

**COURT APPOINTED RECEIVER
PRO SE**

# Table Of Contents

**Page**

SUPPLEMENTAL LIST OF PARTIES.................................................................................ii

STATEMENT OF THE CASE........................................................................................ 1

STATEMENT IN OPPOSITION TO ORAL ARGUMENT ........................................... 2

STATEMENT OF FACTS ............................................................................................. 3

    The Bankruptcy Court Judgment and Appeals Thereof .......................................3

    Domestication of the Judgment and Appointment of the Receiver ...................................3

    The District Court Orders Appellees to Turnover and Authorizes the
        Receiver to Sell the Driscoll Property .........................................................4

    The District Court Approves the Sale of the Driscoll Property ..........................................5

SUMMARY OF ARGUMENT ..................................................................................... 6

APPELLEES' ARGUMENT........................................................................................... 7

    1.    There is No Legal Support for Appellants' Collateral Attack on the
        Validity of the Judgment.....................................................................................7

    2.    A Court May Require a Judgment Debtor to Turn Over All Non-
        Exempt Property to a Receiver. ..............................................................................10

    3.    The Plain Language of the Statute Does Not Require the Turnover
        Order to Specifically Identify Property...............................................................12

    4.    The Receiver Order, the Turnover Order and the Sale Order Were
        Supported by Sufficient Evidence of Non-Exempt Property Which
        is Not Subject to Sale by Ordinary Legal Process. ...............................................14

    5.    The Receiver Order, the Turnover Order and the Sale Order Were
        Supported by Sufficient Evidence of Non-Exempt Property Which
        is Not Subject to Sale by Ordinary Legal Process. ...............................................14

    6.    Appellants Do Not Have the Right to a Jury Trial on the
        Appointment of a Receiver, the Turnover Order or the Sale Order.......................16

    7.    The Court Lacks Jurisdiction to Review the Receiver's
        Appointment as Master in Chancery.....................................................................18

PRAYER.................................................................................................................. 19

i

# SUPPLEMENTAL LIST OF PARTIES

Pursuant to the Rules 38.2(a)(1) and 38.1(a) of the Texas Rules of Appellate Procedure, Appellees file this supplement to the list of parties filed by Appellants, which omitted Eva Engelhart, the court-appointed receiver, as an Appellee. Ms. Engelhart was the movant in two of the three orders in this appeal. Therefore, she is clearly an Appellee.

Appellee:                    Eva S. Engelhart
Ross, Banks, May, Cron & Cavin, P.C.
2 Riverway, Suite 700
Houston, Texas 77056-1919

Attorney for Appellee:      Appearing *pro se* as court-appointed receiver

4476732v1

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bahar v. Lyon Fin. Servs.,*
330 S.W.3d 379 (Tex. App.—Austin 2010, pet. denied) .................................18

*Bergeron v. Sessions,*
561 S.W.2d 551 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.) ...................17

*Black v. Shor,*
443 S.W. 3d 170 (Tex. App.—Corpus Christi 2013, no pet.) ...........................13

*Boger v. Moore, Inc.,*
196 S.W.2d 646, 649 (Tex. Civ. App.—Beaumont 1946, no writ) ...................17

*Congleton v. Shoemaker,*
No. 09-11-00453-CV, 2012 WL 1249406 (Tex. App.—Beaumont Apr.
12, 2012, pet. denied) (mem. op.) .....................................................................19

*Cross v. Cross,*
738 S.W.2d 86 (Tex. App.—Corpus Christi 1987, writ dism'd w.o.j.) .............16

*Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.),*
134 S. Ct. 2165 (2014) .........................................................................7, 9, 10

*Ferguson v. Ferguson,*
210 S.W.2d 268 (Tex. Civ. App.—Austin 1948, writ ref'd n.r.e.) ...................17

*Gunther v. Dorff,*
296 S.W.2d 638 (Tex. Civ. App.—Waco 1956, writ dism'd) ...........................16

*Hennigan v. Hennigan,*
666 SW 2d 322 (Tex. App.—Houston [14th Distr.] 1984, writ dism'd) ............15

*Henry v. Masson,*
333 S.W.3d 825 (Tex. App.—Houston [1st Dist.] 2010, no pet.) .....................16

*In re BP RE, L.P.,*
735 F.3d 279 (5th Cir. 2013) ...............................................................7, 8, 9

iii

*Moody v. State*,
538 S.W.2d 158 (Tex. Civ. App.—Waco 1976, writ ref'd n.r.e) ......................16

*Moyer v. Moyer*,
183 S.W. 3d 48 (Tex. App. Austin, 2005, no pet.) .....................................13, 18

*Pillitteri v. Brown*,
165 S.W.3d 715 (Tex. App. 2005) ................................................................15

*Sheikh v. Sheikh*,
248 S.W.3d 381 (Tex. App. Houston 1st Dist. 2007) .......................................18

*Steenland v. Texas Commerce Bank Nat. Ass'n*,
648 S.W.2d 387 (Tex. App.—Tyler 1983, writ ref'd n.r.e.) .............................17

*Stern v. Marshall*,
564 U.S. 2 (2011) .........................................................................................7, 8

*Suttles v. Vestin Realty Mortg. I, Inc.*,
317 S.W.3d 412 (Tex. App.—Houston [1st Dist.] 2010, no pet.) .....................15

*Tanner v. McCarthy*,
274 S.W.3d 311 (Tex. App.—Houston [1st Dist.] 2008, no pet.) .... 10, 13, 14, 18

**STATUTES**

TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) ................................ 10, 11, 14, 16

TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(h) ......................................11, 12, 13

TEX. CIV. PRAC. & REM. CODE § 31.002(b)(2) ...............................................10, 12

TEX. CIV. PRAC. & REM. CODE § 31.002(b)(3) ...............................................10, 11

TEX. CIV. PRAC. & REM. CODE § 31.0025 ...........................................................15

**OTHER AUTHORITIES**

Rule of Civil Procedure 171...............................................................................18

4476732v1

**STATEMENT OF THE CASE**

This appeal is the Appellants' most recent dilatory tactic in a lengthy dispute regarding non-payment of a promissory note. More than four years ago, William G. West (the "Trustee") obtained a judgment of approximately $1.2 million against the Appellants in the United States Bankruptcy Court for the Southern District of Texas. After a series of frivolous appeals by Appellants, including a petition for *certiorari* denied by the United States Supreme Court, the Trustee domesticated the judgment in the 270th District Court of Harris County, Texas.

Philippe Tanguy admitted in an affidavit of net worth that he has significant non-exempt assets, including a rental property in Houston, non-exempt income from his wholly owned entities, and an airplane located in Georgia. After a hearing at which Tanguy's affidavit was introduced into evidence, the District Court ordered the appointment of Eva S. Engelhart (the "Receiver") as receiver. The Receiver subsequently obtained an order requiring Tanguy to turn over the rental property to her and an order authorizing her to sell the property.

The Appellants appealed (i) the order appointing the Receiver, (ii) the order requiring them to turn over the rental property to the Receiver, and (iii) the order authorizing the Receiver to sell the rental property.

1

4476732v1

## STATEMENT IN OPPOSITION TO ORAL ARGUMENT

Appellees believe that the legal issues presented in this appeal have been authoritatively decided, and the facts and legal arguments are adequately presented in the parties' briefs. Accordingly, oral argument is not necessary and was requested by Appellants for the purpose of causing further delay.

[Remainder of page left intentionally blank]

4476732v1

## STATEMENT OF FACTS

### *The Bankruptcy Court Judgment and Appeals Thereof*

On March 30, 2010, the Trustee obtained a judgment against Appellees in the amount of $1,183,090.80, plus post-judgment interest and attorney's fees in the amount of $31,180.75 (the "Judgment") (CR at p. 5; *see also* CR at pp. 94-109).

Appellees appealed the Judgment from the Bankruptcy Court to the United States District Court for the Southern District of Texas, which affirmed the Bankruptcy Court's Judgment, found that the appeal was frivolous, and awarded the Trustee reasonable and necessary fees and costs for defending the appeal. (CR at pp. 69-93).

Appellees then appealed to the United States Court of Appeals for the Fifth Circuit, which also affirmed the Bankruptcy Court's Judgment. (CR at pp. 59-68).

Finally, Appellees had their petition for writ of *certiorari* denied by the Supreme Court of the United States. (CR at pp. 26-113).

### *Domestication of the Judgment and Appointment of the Receiver*

On November 8, 2013, the Trustee domesticated the Judgment in the 270th District Court of Harris County, Texas (the "District Court") (CR at pp. 5-11).

On November 11, 2013, the Trustee filed an Application for Turnover After Judgment and For Appointment of a Receiver and Master (the "Application to Appoint a Receiver") (CR at pp. 12-14).

4476732v1

On April 25, 2014, following an unsuccessful mediation, the District Court held an evidentiary hearing on the Application to Appoint a Receiver. (RR Apr. 25, 2014).

At the hearing, counsel for the Trustee introduced two exhibits—Tanguy's sworn affidavit of net worth and his federal tax returns for the years 2009 through 2012. (RR April 25, 2014, at pp. 3:24-4:3; CR at pp. 162-164). Appellants introduced no evidence at the hearing.

Counsel for the Trustee argued that any of three non-exempt assets listed on Tanguy's affidavit of net worth supported the appointment of a receiver—income from a rental property located at 1714 Driscoll Street in Houston, Texas (the "Driscoll Property"), income of several hundred thousand dollars in the form of distributions from Tanguy's wholly owned entities, and an airplane located in Georgia. (RR April 25, 2014, at pp. 5:1-6:17; pp. 8:1-25).

On April 25, 2014, the District Court signed and entered the Order Granting Turnover and Appointing Receiver and Master (the "Receiver Order"), which appointed Eva S. Engelhart as the Receiver. (CR at pp. 136-143).

***The District Court Orders Appellees to Turnover, and Authorizes the Receiver to Sell, the Driscoll Property***

On May 23, 2014, the Receiver filed an Emergency Motion to Compel Turnover of Non-Exempt Real Property, To Retain Real Estate Broker and to Sell Non-Exempt Real Property (the "Motion to Compel"). (CR at pp. 147-150).

4

On May 30, 2014, the District Court held a hearing on the Motion to Compel. (RR May 30, 2014). The Receiver appeared at the hearing *pro se* and Appellees appeared through counsel. (RR May 30, 2014, at p. 2). The Trustee did not appear at the hearing on the Motion to Compel. *Id.*

On May 30, 2014, the District Court entered its Order to Compel Turnover of Non-Exempt Real Property, to Retain Real Estate Broker and to Sell Non-Exempt Real Estate (the "Turnover Order"). (CR at pp. 182-83).

***The District Court Approves the Sale of the Driscoll Property***

On July 9, 2014, the Receiver filed her Motion to Sell Real Property at 1714 Driscoll St. *See* App'x A.

On October 10, 2014, the District Court entered its Third Amended Order to Sell Property at 1714 Driscoll St. (the "Sale Order"). *See* App'x B.

On October 30, 2014, Appellees timely filed a notice of appeal of the Sale Order. *See* App'x C. The notice of appeal of the Sale Order was docketed in this appeal on October 31, 2014. *See* App'x D.

Appellants did not file a notice of designation of additional items to be included in the record for this appeal related to the Sale Order until December 29, 2014. *See* App'x E.[1]

---

[1] Appellants' designation of the record in connection with the Sale Order has not been completed by the clerk's office. Appellees have included the relevant documents in the Appendix to this brief. All of the documents in the Appendix will be part of the supplemental record.

4476732v1

## SUMMARY OF ARGUMENT

The Trustee obtained the Judgment four years ago and domesticated it in the District Court over a year ago. Despite Tanguy admitting that he has hundreds of thousands of dollars in non-exempt assets and the Driscoll Property being under contract to sell for five months, the Trustee has not recovered a single dollar from the Appellants as a result of this frivolous appeal.

Each of Appellants' seven points on appeal lack any merit in the law or the undisputed facts in this case. Appellants' primary argument, made in slightly modified forms in points of appeal 2, 4, and 5, is that they should not be compelled to turn over all non-exempt property to the Receiver and, instead, they have the right to dictate how their non-exempt assets are monetized. Appellants attempt to transmogrify the receiver and turnover statutes from laws designed to assist judgment creditors in collecting non-exempt assets from recalcitrant judgment debtors, like the Appellees, into statutes designed for the benefit and protection of judgment debtors. Appellants' arguments ultimately fail because they require the Court to ignore the plain language of the statutes and read additional elements into the statutes that do not exist.

Appellants' remaining arguments are equally unavailing. Point of appeal No. 1 is foreclosed by a recent Supreme Court decision; point of appeal no. 3 was reversed by statute nearly a decade ago; point of appeal no. 6 is contrary to long-

6

4476732v1

standing Texas case law; and the Court does not have jurisdiction to consider point of appeal no. 7.

## APPELLEES' ARGUMENT

**1.    There is No Legal Support for Appellants' Collateral Attack on the Validity of the Judgment**.

Appellants' first issue on appeal is a collateral attack on the validity of the Judgment based on the Bankruptcy Court's alleged lack of subject matter jurisdiction. Appellants misstate the procedural posture of the rulings on this issue below and, based on that incorrect description, argue that there has been a change in applicable Fifth Circuit law that invalidates the Judgment. *See In re BP RE, L.P.*, 735 F.3d 279 (5th Cir. 2013). Not only is the Fifth Circuit's *BP RE* decision inapplicable to this case, the United States Supreme Court recently issued an opinion that validates bankruptcy court judgments, such as the one in this case, that were affirmed after *de novo* review by federal district courts sitting as intermediate courts of appeal. *See Exec. Benefits Ins. Agency v. Arkison* (*In re Bellingham Ins. Agency, Inc.*), 134 S. Ct. 2165 (2014).

Contrary to what is set forth in Appellants' brief, they have never previously challenged the Judgment on the basis of lack of subject matter jurisdiction or constitutional authority of the Bankruptcy Court. The Supreme Court issued its watershed decision regarding bankruptcy court jurisdiction and constitutional authority in *Stern v. Marshall*, 564 U.S. 2 (2011), during the pendency of the

7

Appellants' appeal of the Judgment to the federal district court. The federal district court asked the parties to brief the issue and ultimately ruled that *Stern* did not apply. (CR at pp. 69-93). Appellants then filed an appeal to the Fifth Circuit. The appeal raised the issue of whether, in light of *Stern*, the Bankruptcy Court had subject matter jurisdiction and authority to rule on Appellants' counterclaims against the estate. However, the appeal did not argue that the Bankruptcy Court lacked jurisdiction and authority to enter the Judgment against the Appellants. (CR at pp. 59-68).

In their brief, Appellants falsely allege that the Fifth Circuit concluded that Appellants waived or consented to the Bankruptcy Court's subject matter jurisdiction and authority as to the Trustee's claim against them. The Fifth Circuit could not have made such a finding because the only issue presented in that appeal was whether the Bankruptcy Court had subject matter jurisdiction and authority to rule on Appellants' counterclaims against the bankruptcy estate.[2]

The goal of Appellants' mischaracterization of the record below is to make it appear as if this case is subject to the Fifth Circuit's ruling in *BP RE* that a party cannot waive the constitutional requirements of authority under Article III. In reality, no court has ever ruled that Appellants waived or consented to subject

---

[2] On the issue of whether the Bankruptcy Court had subject matter jurisdiction to rule on Appellants' counterclaims against the estate, the Fifth Circuit held, as did the federal district court, that *Stern* did not apply. (CR at pp. 59-68).

8

matter jurisdiction or constitutional authority. Therefore, *BP RE* has no bearing on this case.

The Appellants are correct that there has been a significant change in case law in the time since entry of the Judgment; they have just cited this Court the wrong case. Rather than *BP RE*, the newly issued opinion applicable to this case is the Supreme Court's ruling in *Bellingham*. In that case, the Supreme Court declined to address the waiver and consent issue decided in *BP RE*. *Bellingham*, 134 S. Ct. at 2174-75. Instead, the Supreme Court ruled that bankruptcy court judgments in non-core matters must be affirmed by an Article III federal district judge after *de novo* review. *Id.*

Critically, the Supreme Court held that there is no constitutional difference between a district court's *de novo* review of a report and recommendation from a bankruptcy court and a district court's *de novo* review of a "final" bankruptcy court judgment on appeal:

> At bottom, [Appellant] argues that it was entitled to have an Article III court review *de novo* and enter judgment on the fraudulent conveyance claims asserted by the trustee. In effect, [Appellant] received exactly that. The District Court conducted *de novo* review of the summary judgment claims, concluding in a written opinion that there were no disputed issues of material fact and that the trustee was entitled to judgment as a matter of law. In accordance with its statutory authority over matters related to the bankruptcy, *see* § 1334(b), the District Court then separately entered judgment in favor of the trustee. [Appellant] thus received the same review from the District Court that it would have received if the Bankruptcy Court had treated the fraudulent conveyance claims as non-core proceedings

9

under § 157(c)(1). In short, even if [Appellant] is correct that the Bankruptcy Court's entry of judgment was invalid, the District Court's *de novo* review and entry of its own valid final judgment cured any error.

*Bellingham*, 134 S. Ct. at 2175.

*Bellingham* is directly applicable to this case. Even if Appellants were correct and the Bankruptcy Court did not have constitutional authority to enter the Judgment, the federal district court's *de novo* review and affirmation of the Judgment cured any Article III deficiency. Therefore, there is no legal support for Appellants' collateral attack on the validity of the Judgment and this argument is nothing more than a red herring.

## 2. A Court May Require a Judgment Debtor to Turn Over *All* Non-Exempt Property to a Receiver.

The Receiver was appointed pursuant to Texas Civil Practices & Remedies Code Ann. § 31.002(b)(3) (West 2008). In order for a court to grant relief under § 31.002(b), it must first find that the requirements of § 31.002(a) have been satisfied. *Tanner v. McCarthy*, 274 S.W.3d 311, 322 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("The relief allowed by section 31.002(b), therefore, may be granted only when the conditions in section 31.002(a) exist."). Section 31.002(a) requires the court to find that the judgment debtor owns *some* non-exempt property that "cannot readily be attached or levied on by ordinary legal process." TEX. CIV.

4476732v1

PRAC. & REM. CODE ANN. § 31.002(a). Once that threshold showing has been made under § 31.002(a), the court is free to grant relief under § 31.002(b).

Under Section 31.002(b)(1), a court may require the judgment debtor to turnover "nonexempt property that is in the debtor's possession or is subject to the debtor's control." *Id.* at § 31.002(b)(1). Notably absent from the plain language of Section 31.002(b)(1) is any requirement that the non-exempt property cannot be readily attached or levied on by ordinary legal process. The only requirement is that the property be non-exempt and in the debtor's possession or subject to the debtor's control. Similarly, Section 31.002(b)(3) allows a court to "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." *Id.* at § 31.002(b)(3). Again, conspicuously absent from Section 31.002(b)(3) is any requirement that the non-exempt property cannot be readily attached or levied on by ordinary legal process. Appellants' argument asks this Court to ignore the plain language of these statutes and engraft the ordinary legal process language found in Section 31.002(a) onto Sections 31.002(b)(1) and (3).

The plain language of Sections 31.002(a) and (b) establish that a court must find that there is *some* non-exempt property that cannot be readily attached or levied on by ordinary legal process and, once that showing has been made, it may

11

order the judgment debtor to turn over *all* non-exempt property to a receiver.[3] This conclusion is bolstered by Section 31.002(h) which does not require a court to specifically identify the property that is subject to turnover. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(h). Appellants' interpretation of Section 31.002(a) and (b) would contradict (h) and make the statute internally inconsistent. Not only do the Appellants ignore Section 31.002(h) in their argument here, their next point of appeal argues for a ruling that is exactly the opposite of the statute.[4]

### 3. The Plain Language of the Statute Does Not Require the Turnover Order to Specifically Identify Property.

The Receiver Order provides the Receiver with "the power and authority to take possession of all non-exempt property" of the Appellants. (CR at pp. 136-37). Appellants complain that the Receiver Order was required to specifically identify property that is subject to turn over. This argument is directly contrary to the plain language of the statute.

As discussed above, Texas Civil Practice and Remedies Code Section 31.002(b)(2) permits a court to "appoint a receiver with the authority to take

---

[3] The Appellants argument that there was no or insufficient evidence of any non-exempt property that cannot be readily attached or levied on by ordinary legal process is addressed in point of appeal nos. 4 and 5.

[4] Appellants' true motivation in this case is made transparent at the end of their argument on point of appeal no. 2. Appellants' ultimate goal is to have the Driscoll Property sold at a constable's sale rather than for a fair market value. The District Court recognized that such a sale would result in no recovery to the Trustee. (RR May 30, 2014, at p. 12:10-13:4) ("My general response [to the Appellants' complaint at having to pay broker and trustee's fees] is, my experience with that is, at a constable's sale it's only going to go for the amount of the liens. . . Because why would anybody do anything else? . . . Generally speaking, you know, constable sales don't generate very much in excess of the lien, it's been my experience."). Why would the Trustee, or any judgment creditor for that matter, select a path that would minimize, rather than maximize, its recovery on the Judgment? In particular, the Trustee is a chapter 7 trustee in bankruptcy with a fiduciary duty to maximize the distribution to creditors of the estate.

4476732v1

possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." TEX. CIV. PRAC. & REM. CODE § 31.002(b)(2). Further, Section 31.002(h) states that a "court may enter or enforce an order under this section that requires the turnover of nonexempt property **without identifying in the order the specific property subject to turnover**."

Subsection (h) of Section 31.002 became effective on May 17, 2005. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(h) (West 2008) (effective May 17, 2005). Appellants cite only one case in support of their argument that a turnover order must specifically identify property. *See Moyer v. Moyer*, 183 S.W. 3d 48 (Tex. App.—Austin 2005, no pet.). *Moyer* was decided on August 17, 2005, just three months after the effective date of Section 31.002(h), but failed to address the new Subsection (h). However, it is clear that *Moyer* has been superseded by statute.

On several occasions since the enactment of Section 31.002(h), courts of appeals have affirmed its plain meaning and held that a turnover order does not need to specifically identify property. *See, e.g., Black v. Shor*, 443 S.W. 3d 170, 175 (Tex. App.—Corpus Christi 2013, no pet.); *Tanner v. McCarthy*, 274 S.W. 3d 311, 320-21 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Therefore, the

Receiver Order is consistent with Section 31.002(h) in that it requires Appellants to turn over all non-exempt property to the Receiver.

**4.**    **The Receiver Order, the Turnover Order and the Sale Order Were Supported by Sufficient Evidence of Non-Exempt Property Which is Not Subject to Sale by Ordinary Legal Process.**

**5.**    **The Receiver Order, the Turnover Order and the Sale Order Were Supported by Sufficient Evidence of Non-Exempt Property Which is Not Subject to Sale by Ordinary Legal Process.**

In their fourth and fifth points of appeal, Appellants argue that there is no evidence or, in the alternative, insufficient evidence that they owned *any* non-exempt property that cannot be readily attached or levied on by ordinary legal process. This Court has previously established an extremely low threshold for a judgment creditor's showing under Section 31.002(a):

> Section 31.002 does not specify, or restrict, the manner in which evidence may be received in order for a trial court to determine whether the conditions of section 31.002(a) exist, nor does it require that such evidence be in any particular form, that it be at any particular level of specificity, or that it reach any particular quantum before the court may grant aid under section 31.002. However, a trial court must nonetheless determine that the request for aid pending before the court falls within the scope of section 31.002 before it enters an order granting relief under that section. In making this determination, the trial court must have some evidence before it that establishes that the necessary conditions for the application of 31.002 exist.

*Tanner*, 274 S.W.3d at 322. Thus, all three District Court orders must be affirmed if there is *any* of evidence of *any* non-exempt property that cannot readily be attached or levied on by ordinary legal process.

14

At the hearing on the Application to Appoint Receiver, counsel for the Trustee introduced two exhibits—Tanguy's sworn affidavit of net worth and his federal tax returns for the years 2009 through 2012. (RR April 25, 2014, at pp. 3:24-4:3; CR at pp. 162-164). Appellants introduced no evidence at the hearing. Counsel for the Trustee argued that any of three non-exempt assets listed on Tanguy's affidavit of net worth supported the appointment of a receiver: (1) rental income from the Driscoll Property, (2) income of several hundred thousand dollars in the form of distributions from Tanguy's wholly owned entities, and (3) an airplane located in Georgia. (RR April 25, 2014, at pp. 5:1-6:17; pp. 8:1-25).

Appellants filed an eleventh hour pleading the night before the hearing on the Application to Appoint Receiver which alleged that there was no equity in the Driscoll Property. (RR April 25, 2014, at p.3:6-13 and p. 5:6-12). That turned out to be false and there is substantial equity in the Driscoll Property that will be realized upon the Receiver's sale. However, the rental income from the Driscoll Property disclosed by the Appellants is non-exempt property that cannot readily be attached or levied on by ordinary legal process. *See, e.g.*, *Suttles v. Vestin Realty Mortg. I, Inc.*, 317 S.W.3d 412 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Tanguy's income derived from his various wholly-owned entities is non-exempt property that cannot readily be attached or levied on by ordinary legal process. *See Hennigan v. Hennigan*, 666 SW 2d 322 (Tex. App.—Houston [14th

15

Distr.] 1984, writ dism'd); TEXAS CIV. PRAC. AND REM. CODE § 31.0025. (RR April 24, 2014 at p. 5:21-23 and p. 9:15-18).

Finally, there can be no doubt that the airplane located in Georgia is non-exempt property that cannot readily be attached or levied on by ordinary legal process because it is not located in Texas. *See Pillitteri v. Brown*, 165 S.W.3d 715, 722 (Tex. App.—Dallas 2005, no. pet.) ("The ordinary legal process by which property is attached or levied upon is a writ. A writ must be addressed to a sheriff or constable in the State of Texas, and directs the official to attach and hold the defendant's property as shall be found within his county.").

The District Court was presented with evidence regarding these three assets and any one of them satisfies the requirements of Section 31.002(a).

6. **Appellants Do Not Have the Right to a Jury Trial on the Appointment of a Receiver, the Turnover Order or the Sale Order**.

It is a well-established principal that a judgment debtor does not have the right to a jury trial on the appointment of a receiver. *See*, *e.g.*, *Cross v. Cross*, 738 S.W.2d 86, 89 (Tex. App.—Corpus Christi 1987, writ dism'd w.o.j.) ("The appointment of a receiver is an ancillary proceeding to the main suit and lies within the sound discretion of the trial court. Accordingly, appellants are not entitled to a jury trial on the trial court's discretionary authority to appoint a receiver.") (internal citations omitted); *Gunther v. Dorff*, 296 S.W.2d 638, 639 (Tex. Civ. App.—Waco 1956, writ dism'd) ("The appointment of a receiver is a matter

16

resting largely and primarily in the discretion of the judge of the court to whom the application is addressed. Defendant is not entitled to a jury trial [in] such instance.").

"Traditionally, it has been held that the right to trial by jury does not extend to receivership proceedings." *Henry v. Masson*, 333 S.W.3d 825, 848 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Moody v. State*, 538 S.W.2d 158, 161 (Tex. Civ. App.—Waco 1976, writ ref'd n.r.e.). "[A] court of competent jurisdiction may appoint a receiver," and as a result, a hearing on receivership proceedings is "inherently incapable of being determined by a jury." *Boger v. Moore, Inc.*, 196 S.W.2d 646, 649 (Tex. Civ. App.—Beaumont 1946, no writ). The reasoning behind this rule is that because "receivership property is in custody of the law, its management and control is that of the court; jury intervention would impermissibly transfer control and management of the receivership from the court to the jury." *Bergeron v. Sessions*, 561 S.W.2d 551, 554 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.) (citing *Ferguson v. Ferguson*, 210 S.W.2d 268, 269 (Tex. Civ. App.—Austin 1948, writ ref'd n.r.e.)). Thus, after the appointment of the Receiver, Appellants did not have the right to a jury trial in connection with the Receiver's motions leading to the Turnover Order and Sale Order.[5]

---

[5] Appellants cite only one case in support of their argument that they were entitled to a jury trial, *Steenland v. Texas Commerce Bank Nat. Ass'n*, 648 S.W.2d 387, 391 (Tex. App.—Tyler 1983, writ ref'd n.r.e.). The issue in *Steenland* was whether the appellant had the right to a jury trial on the valuation of the non-exempt portion of his homestead. In the present case, Appellants admitted in the Tanguy Affidavit that the Driscoll Property is not Tanguy's

4476732v1

Finally, Appellants argue that PTRE had the right to a jury trial on its plea in intervention. The District Court has not ruled on PTRE's plea in intervention. Therefore, PTRE is not yet a party to the proceeding below and cannot be an appellant in this case. Accordingly, this argument should be disregarded because PTRE has no standing to make such argument in this appeal.

7. **The Court Lacks Jurisdiction to Review the Receiver's Appointment as Master in Chancery**.

Appellants' final argument is that the District Court abused its discretion by granting master in chancery powers to the Receiver. This Court does not have jurisdiction to consider this argument.

"[U]nlike a post-judgment turnover order, which is generally considered final and appealable—a post-judgment order appointing a master in chancery is not final and appealable." *Sheikh v. Sheikh*, 248 S.W.3d 381, 393 (Tex. App.—Houston [1st Dist.] 2007, no pet.). There is no appellate jurisdiction over an order appointing a master in chancery even when that order is embedded within a turnover-and-receivership order. *Id.* (citing *Moyer v. Moyer*, 183 S.W.3d 48, 51 (Tex. App.—Austin 2005, no pet.)). "The *Moyer* court reasoned that a post-judgment master-in-chancery order is not final and appealable because Rule of Civil Procedure 171, which authorizes the order's entry, requires further action by

---

homestead and is non-exempt rental property. Therefore, *Steenland* is not applicable because there is no dispute over whether the Driscoll Property is non-exempt.

4476732v1

the court; a master-in-chancery order is, therefore, not final in the sense that it can be appealed." *Id*. Instead, the master in chancery portion of a turnover-and-receiver order is only subject to review through mandamus. *Id*. at 394; *see also Bahar v. Lyon Fin. Servs*., 330 S.W.3d 379, 388 (Tex. App.—Austin 2010, pet. denied) (citing *Moyer* and *Sheikh*); *Tanner*, 274 S.W.3d at 324 (same).

Appellants cite only one unpublished decision in support of their argument that the District Court could not grant master in chancery powers to the Receiver. *See Congleton v. Shoemaker*, No. 09-11-00453-CV, 2012 WL 1249406 (Tex. App.—Beaumont Apr. 12, 2012, pet. denied) (mem. op.). However, the first footnote in that decision indicates that the trial court had vacated the master in chancery portion of the receivership order prior to the appeal and, therefore, the appellate court did not discuss any master in chancery issues. *Id*. at n.1.

Accordingly, this Court lacks jurisdiction to adjudicate the master in chancery arguments made by Appellants.[6]

## **PRAYER**

In conclusion, this Court should affirm the District Court's Receiver Order, Turnover Order, and Sale Order and grant such other relief as is just.

---

[6] Under the heading of its seventh point on appeal, Appellants slip in two final, frivolous arguments regarding the Receiver's alleged "bias" and her fees. First, any appeal of the Receiver's fees is premature. She has not been awarded any fees because she has not been permitted to sell any non-exempt property due to this appeal. Second, as stated above, the Receiver is an appellee in this case because she was the movant in two of three orders from which the Appellants appealed.

19

Date: January 2, 2015.

Respectfully submitted,

**PORTER HEDGES LLP**

By: /s/ Aaron J. Power
Joshua W. Wolfshohl
State Bar No. 24038592
jwolfshohl@porterhedges.com
Aaron J. Power
State Bar No. 24058058
apower@porterhedges.com
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 228-1331 (fax)

**ATTORNEYS FOR APPELLEE
WILLIAM G. WEST, CHAPTER 7
TRUSTEE**

**and**

By: /s/ Eva S. Engelhart
Eva S. Engelhart
State Bar No. 00796513
Ross, Banks, May, Cron & Cavin, P.C.
2 Riverway, Suite 700
Houston, Texas 77056-1919
(713) 626-1200
(713) 623-6014 (fax)

**Court Appointed Receiver**

20

4476732v1

**CERTIFICATE OF SERVICE**

Pursuant to Rules 6.3 and 9.5(b), (d), and (e) of the Texas Rules of Appellate Procedure, this is to certify that on this 2nd day of January 2015, a true and correct copy of the foregoing was served on the following counsel of record by U.S. first class mail and by electronic delivery as follows:

Joe Alfred Izen, Jr.
5222 Spruce Street
Bellaire, Texas 77401
jizen@comcast.net

*Attorney for Appellant Philippe Tanguy, 13500 Air express, L.L.C., 13500 Air Express, L.P. and Intervenor, PTRE Holdings, L.P.*

/s/ Aaron J. Power
Aaron J. Power

4476732v1

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(C) because this brief contains 4,722 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) and the type style requirements of Texas Rule of Appellate Procedure 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font or larger.

/s/ Aaron J. Power
Aaron J. Power

4476732v1

APPENDIX TAB A

Motion to Sell Real Property at 1714 Driscoll Street

NO. 2013-67779

| WILLIAM G WEST, | § | IN THE DISTRICT COURT OF |
| AS CHAPTER 7 TRUSTEE OF | § | |
| RICHARD DAVIS, | § | |
| Plaintiff | § | |
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| PHILIPPE TANGUY, 13,500 AIR | § | |
| EXPRESS, LLC, AND 13,500 AIR | § | |
| EXPRESS, LP, | § | |
| Defendants | § | 270TH JUDICIAL DISTRICT |

## MOTION TO SELL REAL PROPERTY AT 1714 DRISCOLL ST.

COMES NOW, Eva Engelhart, Court Appointed Receiver, in the above entitled case, and would move the Court to sell real property subject to the Contract of Sale attached hereto.

I.

In support of this motion, Receiver would show that heretofore in this cause, Judgment was rendered in favor of Plaintiff, William G. West, Trustee, against the Defendants on March 30, 2010, which judgment has now become final. Plaintiff proceeded to collect the judgment by conducting extensive post judgment discovery, issuance of writs, and attending mediation. At all times, the Debtor was non-compliant and obstructive. Ultimately, the Plaintiff was forced to domesticate the judgment in Texas State Court and appoint a Receiver which receivership order was singed April 25, 2014. A true and correct copy of the receivership order is attached hereto as Exhibit A and incorporated herein by reference. Pursuant to the Receivership Order, the Court authorized the Receiver to retain a real estate broker and sell non-exempt real property located at 1714 Driscoll St. The Receiver retained, Joanne Roamer, of BHGRE Gary Greene, which Listing Agreement is attached hereto as Exhibit B. Pursuant to

**APPENDIX A**

Roamer's analysis of the property value, it was listed for $495,000.00. Ms. Roamer began marketing the property and it is currently under contract for a pending sale for $540,000.00. See Residential Contract attached hereto as Exhibit C.

<h2 align="center">NATURE OF THE NEGOTIATIONS AND CONTRACT</h2>

Ms. Roamer received multiple offers for the property ranging from the asking price to $525,000.00. The receiver requested proof of funds and asked the broker to request the best and highest offer from all bidders. Four offers came in ranging from $525,000.00 to $540,000.00 cash with proof of funds and minimal closing expenses for the seller. The Receiver accepted the $540,000.00 and entered into the attached contract. This amount is the highest price to date in the neighborhood for a home of the size sold. The lot will be used for a new construction of a single family home.

Per the estimated preliminary HUD Statement, attached hereto as Exhibit D, the two mortgages on the property will be paid off for a total of $191,564.67, amount based on November 2013 figures. The title company and receiver are seeking cooperation from the mortgage companies and debtor to obtain current payoffs and anticipate the payoffs to be slightly less than in 2013. The real estate broker will be paid $32,400.00 Additional closing costs are $145.99 and the prorated taxes are $6,679.46. The net to the Receiver will be approximately $309,206.28. After the receiver's fee of 25% pursuant to the receivership order, the Plaintiff will receive approximately $231,904.71 toward the judgment. The Defendant previously alleged that the property would yield a higher balance to the Plaintiff if sold at a constable's sale. Such fire sales are for bidders interested in paying, no more than, very small premiums above the lien price and the receiver's fee would still apply to any amount above the liens. Consequently, a Constable's sale would not yield a payment toward the judgment of over $200,000.00.

Plus, further marking of the property may become counter-productive as outstanding mortgage payments would accrue on the property. The two mortgage companies are aware of the sale and the second mortgage payment is currently not due until August 3. The first mortgage payment was due July 1, but the mortgage company was made aware that they will be paid at July 31 closing.

Wherefore premises considered, Receiver prays for the court to authorize the sale and distribution of funds as stated above and for such other and further relief to which Receiver may show herself entitled at law or in equity.

Respectfully submitted,
ROSS, BANKS, MAY, CRON & CAVIN P.C.

BY:_____
Eva S. Engelhart   #00796513
2 Riverway, Suite 700
Houston, Texas 77056-1918
713/626-1200 (PHONE)
713/623-6014 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been mailed to the Defendant's attorney of record, Joe Alfred Izen, Jr., on July _____, 2014, Certified Mail No. 7002 2410 0001 9171 7071, Return Receipt Requested, addressed to 5222 Spruce St., Bellaire, Texas 77401.

_____
Eva S. Engelhart

NO. 2013-67779

| WILLIAM G WEST, | § | IN THE DISTRICT COURT OF |
| AS CHAPTER 7 TRUSTEE OF | § | |
| RICHARD DAVIS, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| PHILIPPE TANGUY, 13,500 AIR | § | |
| EXPRESS, LLC, AND 13,500 AIR | § | |
| EXPRESS, LP, | § | |
| Defendants | § | 270TH JUDICIAL DISTRICT |

## ORDER TO SELL PROPERTY AT 1714 DRISCOLL ST.

Plaintiff's Motion To Sell Real Property at 1714 Driscoll St. having been presented, and it appearing to the Court that this motion in all respects should be granted.

IT IS THEREFORE ORDERED:

1. The Received is authorized to sell the property at 1714 Driscoll St. per the contract attached hereto as Exhibit C.

2. Any encumbrances filed/asserted against the property at 1714 Driscoll St. by Philippe Tanguy, 13500 Air Express LLC, and 13,500 Air Express L.P. and/or any of their agents, entities controlled by him, etc. are ordered void and/or released as a matter of law.

3. Philippe Tanguy is to instruct Nationstar and CitiBank mortgages to provide current payoffs to the Receiver and her title company and cooperate fully with the Receiver and her title company.

4. That a Receiver's Deed for the property at 1714 Driscoll St., is a valid legal deed by which good title is to be transferred at closing;

SIGNED this the _____ day of _____, 2014.

_____

Judge Presiding

APPROVED:

ROSS, BANKS, MAY, CRON & CAVIN, P.C.

BY: _____

    Eva S. Engelhart #00796513
    2 Riverway, Suite 700
    Houston, TX 77056-1918
    713/626-1200 (PHONE)
    713/623-6014 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been mailed to the Defendant's attorney of record, Joe Alfred Izen, Jr., on July _____, 2014, Certified Mail No. 7002 2410 0001 9171 7071, Return Receipt Requested, addressed to 5222 Spruce St., Bellaire, Texas 77401.

_____

Eva S. Engelhart



No 2013-67779

Filed 13 November 14 P3.27
Chris Daniel - District Clerk
Harris County
ED101J017821157
By: john scott

| | | |
|---|---|---|
| WILLIAM G WEST, AS CHAPTER 7 TRUSTEE OF RICHARD DAVIS, Plaintiff | § § § § § | IN THE DISTRICT COURT OF |
| VS | § § | HARRIS COUNTY, TEXAS |
| PHILIPPE TANGUY, 13,500 AIR EXPRESS, LLC, AND 13,500 AIR EXPRESS, LP, Defendants | § § § § § | 270th JUDICIAL DISTRICT |

## ORDER GRANTING TURNOVER AND APPOINTING RECEIVER AND MASTER

On this day came on to be heard the Application for Turnover After Judgment And For Appointment of Receiver and Master of Plaintiff-in-Judgment, William G West, as the chapter 7 trustee of the estate of Richard Davis, ("Applicant") After the Court's review of the papers herein on file and all testimony and evidence, became of the opinion that Applicant is entitled to collect upon a final, valid and subsisting judgment against Defendants-in-Judgment, Philippe Tanguy, 13,500 Air Express, LLC, and 13,500 Air Express, LP ("Respondents"), said judgment having been signed on March 30, 2010, in the United States Bankruptcy Court for the Southern District of Texas, Houston, Division ("Bankruptcy Court") There remains a total amount due and owing under the judgment in the sum of $1,214,271 55, plus postjudgment interest accruing at the applicable federal rate of 42% from fourteen dates after the date of entry of the judgment

The Court finds that Applicant has a good faith reason to believe that Respondents own property including present or future rights to property, that cannot be attached or levied on by ordinary legal process and which is not exempt from attachment, execution, or seizure for the satisfaction of liabilities

The Court finds that Applicant is entitled to aid from this Court and it is therefore, ORDERED, ADJUDGED AND DECREED

1 That **Eva Engelhart, Receiver** whose address is 2 Riverway, Suite 700, Houston, Texas 77056, phone (713) 626-1200 ext 4020 is hereby appointed Receiver in this cause pursuant to the Texas Turnover Statute to serve after posting bond in the sum of $100 00 and taking the oath of office with all the power and authority to take possession of all non-exempt property of Respondents that is in the actual or constructive possession or control of Respondents, including but not limited to all cash, accounts receivable (including lease payments, notes receivable, promissory notes, drafts and checks,

3465538v1

monies on deposit in financial institutions, financial accounts (bank accounts) brokerage accounts, certificate of deposits, money market accounts, accounts held by any third party, stocks, bonds, all securities, all real property, deeds to real property, titles to automobiles or other vehicles, boats, planes, all safety deposit boxes or vaults and the contents therein, monies received by the Respondents in the form of checks, cash or credit card payments or receipts, any and all causes of action or chooses of action, contract rights whether present or future, and all furniture, fixtures, equipment, supplies and inventory, and all documents, books and records related to any of said property (including financial records) that is in the actual or constructive possession or control of Respondents, and to pay the proceeds to the Receiver to the extent required to satisfy the amount owed under the judgment and this receivership Receiver is authorized by the Court to obtain a writ of possession for any non-exempt real property of Respondents and to obtain credit reports, bank searches and other reports to aid in locating nonexempt property Receiver may order any Consumer Reporting Agency, as defined by the Fair Credit Reporting Act ("FCRA") Section 16 USC Section 1681b(f) to provide consumer reports on Respondents and witnesses as allowed under FCRA Section 1681b(a)(1)

2 That Applicant is awarded against Respondents and Respondents shall pay to Applicant the sum of $500 00 in additional attorney's fees,

3 That any constable, deputy constable, sheriff, deputy sheriff or any other peace officer is hereby authorized to accompany Receiver pursuant to a writ to locations designated by Receiver where Receiver believes Respondents' assets may be located, said peace officers being hereby Ordered to prevent any person(s) from interfering with the Receiver from carrying out any duty under this Order or interfering with any property in control of the Receiver, or any property subject to this Order

4 The Receiver is hereby authorized to take all action necessary to gain access to all real property, leased premises, storage facilities and safe deposit boxes wherein any real and/or personal property of Respondents may be situated and to seize the contents thereof

5 That any person or any agent of any person, with actual notice of this Order is not to interfere with any property in control of the Receiver or subject to this Order, and is further Ordered not to interfere with the Receiver in the carrying out of any duty under this Order Third parties are hereby notified that the Receiver, to the exclusion of the Respondents, is the party entitled to possess, sell, liquidate and otherwise deal with Respondents' non-exempt real and personal property and once any third party receives notice of this order, they may be subject to liability should they release any property to Respondents unless directed by the Receiver or the court

6  Receiver is authorized but not required to (a) disable or remove any non-exempt property belonging to the Respondents or to place the property into storage  (b) insure any property taken into her possession, and (c) change the locks to premises belonging to the Respondents

7  That Respondents make a full and complete disclosure to the Receiver of all of Respondents' non-exempt assets and to neither directly nor indirectly interfere or impede the Receiver in her performance of her duties under this Order

8  Receiver shall have the power to subpoena from Respondents, third parties and witnesses production of documents, things and information including but not limited to matters concerning the existence, location, and/or value of Respondents' assets and Respondents' location

9. That it is hereby ordered that Receiver pay herself as receiver's fees an amount equal to 25% percent of all proceeds coming into her possession (not to exceed 25% of the amount owed under the judgment and receivership), which shall be taxed as costs against Respondents, which the court finds is fair, reasonable and necessary fee for the Receiver, and which receiver's fees are in addition to the amounts owed under the judgment and this receivership, and is further directed and authorized to pay Applicant's attorney as Trustee for the Applicant the remaining 75% of all proceeds coming into Receiver's possession  No receiver's fee exceeding 25% of all proceeds coming into her possession shall be paid to the Receiver unless an application is filed with and ruled by this court with notice and opportunity for hearing granted for Applicant and Respondents  All Receiver's fees will be taxed as costs against the Respondents

10  That to the extent owed under the turnover and receivership, Respondents turnover to the Receiver at Receiver's address stated above, within ten (10) days of Respondents' receipt of a copy of this Order, all checks, cash, securities (stocks and bonds), promissory notes, documents of title and contracts, and is hereby Ordered to continue  to turnover to the Receiver at the Receiver's address all of said checks, cash, securities (stocks and bonds), promissory notes, documents of title and contracts within three (3) days from Respondents' receipt and possession of such property, if, as and when Respondents become in receipt and possession of any such property

11  That Respondents are Ordered to turnover and deliver custody to the Receiver within ten (10) days from Respondents' receipt of a copy of this Order, the documents described in Exhibit "A" attached hereto, together with all other documents and records requested by the Receiver

12.  Special Master.  The appointment of a Special Master is justified to aid the Court in the performance of specific duties which a sitting court cannot undertake, like serving writs, levying on property, traveling throughout the state to locate and inspect assets, delivering the property to sales lots,

and advertising for and locating prospective buyers, among other tasks   A master will conserve the resources of the Court on post judgment matters, including locating and liquidating property   Since the Court cannot order a witness to travel more than 150 miles, a master is needed to travel to interview witnesses

13   Appointment of a master will result in the need for fewer hearings, lower attorneys' fees, and will protect the economic interests of the Applicant and Respondents

14   A master is able to immediately issue orders, rather than incurring the delays required for the opportunity to be heard in open court   Otherwise, property, evidence, and witnesses can easily disappear before a hearing can be held

15   The Receiver shall be appointed Master in Chancery, to have the broadest powers allowed by the rules   Good cause exists to appoint a master   The master should be familiar with post judgment enforcement and the Receiver is   All uses of the terms "Receiver" and "Master," include the other term, as allowed by law

16   The Master's duties are limited to locating non-exempt assets and the records that determine the ownership of the assets, their value, and the liens against the assets, and reporting her findings to the Court   If approved, the Master's findings will be binding.

17. Other Special Orders· _____

_____

_____

_____

**18. Notice: An Order of the Court has been entered against you. You have the right to hire an attorney to assist you in compliance with this Turnover Order.**

Signed this __25__ day of ___April_____, 2014

_____
Judge Presiding

Approved

**Porter Hedges LLP**

/s/ Aaron J Power
Joshua W Wolfshohl
State Bar No. 24038592
Aaron J Power
State Bar No. 24058058
1000 Main St , 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 228-1331 (fax)

**Attorneys for the Applicant**

## EXHIBIT "A"
## DOCUMENTS TO BE PRODUCED

1       Provide true, correct and complete copies of all personal and business federal income tax returns filed by or prepared for Respondents for the current year and for the last three (3) years prior to the current year, together with all schedules, attachments, W-2 forms, 1099 forms and all similar federal income summary forms for the same years

2       Provide all statements, canceled checks and deposit slips for all checking accounts, savings accounts, credit union accounts or other depository accounts, held either separately or jointly, for the current calendar year and for the last three (3) years prior to the current calendar year for all accounts in which Respondents' name is on the printed checks, in which Respondents have an interest and/or in which Respondents have signatory authority

3       Provide true, correct and complete copies of all financial statements prepared by or on behalf of Respondents within the last three (3) years, including but not limited to, all such statements presented to any financial institution and/or any other party for the purpose of guaranteeing, securing or attempting to secure a loan or financial assistance of any kind

4       All booklets, current and/or annual statements and all other documents evidencing the nature and extent of Respondents' rights under any stock option plan, retirement plan, pension or profit sharing plan, employee stock ownership plan, company savings plan, thrift fund matching plan and all other similar plans prepared or received during the last three (3) years

5       Provide the most recent statements, deposit confirmation slips, documents evidencing the balance, term and interest rates for each and every amount of money and assets in which Respondents have any interest, whether separately or jointly, invested by or for the Respondents in any cash management funds, certificates of deposit, money market funds, treasury bills, bonds, debentures or any other type investment and acquisition paying or promising to pay a return on Respondents' monies invested during the current year and for the three (3) calendar years prior to the current year

6       Provide all certificates of stock and/or brokerage house statements evidencing all ownership and every purchase, sale, assignment or transfer of stocks, bonds, debentures and/or other securities (whether in privately held or publicly traded companies or institutions) owned by Respondents or in which Respondents have a beneficial interest

7       Provide all documents and records of every kind or character showing all business holdings, partnerships (general, limited or otherwise), sole proprietorships, trust, corporations, joint ventures and any other business organizations of every kind in which Respondents are a partner or has an interest and any and all assumed name certificates under which Respondents have done or are doing business

8       Provide all policies of insurance active and terminated in the current year and two (2) calendar years prior to the current year whether life, health, auto, disability, homeowners, personalty or otherwise of which Respondents are the owner, beneficiary, insured, heir to the proceeds, beneficiary of existing or identified trust funded by insurance proceeds

9       Provide all deeds, deeds of trust, land installment contracts, contracts for deeds, syndications, real estate investment trusts, partnership agreements, easements, rights of way, leases, rental agreements, documents involving mineral interests, mortgages, notes and closing statements relating to all real property in which Respondents now have or in which Respondents had an interest during the last three (3) years

10      Provide all certificates of title, current licenses, receipts, bills of sale and loan documents for all motor vehicles and farm equipment, including but not limited to automobiles, trucks, motorcycles, recreational vehicles, boats, trailers, airplanes and other motorized vehicles and equipment owned by Respondents or in which Respondents have and had any interest

11      For every trust of which Respondents are a trustee, joint trustee, beneficiary, settlor or trustor which conveyed, transferred, assigned, created any options to purchase, or disposed of any interest in real property or personal property in any manner during the last three (3) years, please furnish documents evidencing the manner of disposition and the consideration received or to be received Also, furnish all documents showing all evaluations of Respondents' interest, share of principal and income and documents showing the principal and income allocated to Respondents whether or not distributed during the last three (3) years

3465538v1

12      Produce all documents and records of all safe deposit boxes maintained by Respondents and to which Respondents have had access, or has a claim, right or interest in, including all lists of all contents therein  Identify the location of all said safe deposit boxes

13      Produce all documents constituting and/or describing all accounts receivable of Respondents whether or not collected  Also provide all documents identifying all accounts receivables of all ongoing businesses which Respondents own and in which Respondents had and have an interest and a copy of all collected, offset, credited, uncollected, discounted, assigned, pledged and exchanged accounts receivables

14      If any real estate in which Respondents or if applicable, Respondents' present spouse have an interest has been appraised within the past three (3) years, furnish a copy of each appraisal

15      If any personal property in which Respondents or if applicable, Respondents' present spouse has an interest has been appraised within the past three (3) years, furnish a copy of each appraisal

16      If an inventory or list of personal property has been made by Respondents or if applicable, Respondents' present spouse within the past three (3) years, furnish a copy of such inventory or list including all estimates of value placed on each item

17      Produce all documents, notes, bills, statements and invoices evidencing all current indebtedness payable by Respondents or paid off during the last three (3) years and all assignments of promissory notes made by Respondents during the last three (3) years

18      Produce all lease agreements for personal property and real property executed by Respondents within the last three (3) years and/or which are currently in effect, whether as lessee, lessor, sublessee, sublessor, assignee or assignor, including any mineral interest leases

19      Produce all records of all travelers checks, cashier's checks, money orders, draft and draws purchased or cashed within the last three (3) years

20      Provide the names, addresses and telephone numbers of all organizations and persons within Respondents' knowledge who has or may have knowledge of the status of property in which Respondents have and had an interest, whether being community or separate property, the liabilities of Respondents and/or the location and value of any assets of Respondents  Include banks, savings and loan associations, mortgagees, merchants, credit providers, brokers, credit unions, financial institutions, security dealers, people and organizations dealing with mineral interests who have received information from Respondents regarding or including information about Respondents' assets and assets in which Respondents have an interest, Respondents' income and Respondents' liabilities

21      Provide documents and all records which would indicate the cost basis of assets presently owned by Respondents

22      Provide a copy of the current inventory and all past inventories, accounts receivable of all ongoing businesses which Respondents own and in which Respondents had and hasvean interest and a copy of all collected, offset, credited, uncollected discounted, assigned, pledged and exchanged accounts receivable of all businesses owned by Respondents and in which Respondents have and had an interest

23      Provide all contracts in which Respondents are a party or in which Respondents have or had a beneficial interest, including but not limited to any earnest money contracts, construction contracts and sales agreements in which Respondents are due a commission or other remuneration  If Respondents are presently under the terms of any written employment contract and/or agreement or is due any remuneration under any past contract or agreement, furnish a true copy of said contract or agreement

24      Provide minute books, ledgers, corporate records and resolutions pertaining to Respondents or pertaining to any corporation in which Respondents have an interest

25    Provide documents by which every gift, bailment, loan, gratuitous holding assignment, sale, hypothecation, discounted transfer, transfer into lock box payment and transfer of Respondents' property during the last three (3) years, including, but not limited to, all property described hereinabove and any other property of any nature

26    Provide documents and records of every kind and character showing all personal property in which Respondents have and had an interest in the State of Texas, the United States of America or any other place

27    Provide copies of the Articles of Incorporation, partnership agreements and assumed name records of all companies, partnerships, corporations and proprietorships that have owners, employees, officers, directors, shareholders and partners which are or were also owners or employees of Respondents

28    Provide employment records or pay records to indicate every business for which Respondents were employed, provided services, was an independent contractor, general contractor, superintendent, agent or subcontractor during the last three (3) years

29    To the extent not already produced in response to the foregoing, produce the following property, documents and records which Respondents own or have an interest all checks, cash, securities (stocks and bonds), promissory notes, deeds, deeds of trust, documents of title, contracts, accounts receivable, escrow agreements, retainage agreements, records and all documents that identify all property in which Respondents have an interest and that which is collateral or security for any obligation or contingent obligation of Respondents, along with all documents indicating any interest of the Respondents in rental agreements, royalty agreements, licenses, bailment agreements, filings pursuant to the Uniform Commercial Code, security agreements, assignments, all filed or recorded liens, lis pendens, lawsuits, recorded Mechanics and Materialmen's Lien Affidavits, judgments, abstracts, partnership agreements, employment agreements, as well as all documents indicating Respondents' present and prospective heirship, beneficial interest in trusts, beneficial interest in insurance policies and insurance coverage and right to any insurance policy's cash surrender value or ownership

# LISTING AGREEMENT

1. This agreement is made by and between Eva Engelhart, in her capacity as Receiver and Master of Plaintiff-in Judgment, William G. West, as the chapter 7 trustee of the estate of Richard Davis, Case # 2013-67779, 270th District Court, Harris County, Texas, hereinafter referred to as "Seller" and Joanne Roemer of Better Homes and Gardens Real Estate Gary Greene (BHGRE Gary Greene), hereinafter referred to as "Realtor", pursuant to Court Order dated May 30, 2014.

2. In consideration of the services to be performed by Joanne Roemer, hereinafter called Realtor, I hereby authorize the listing of the following property for sale by her as the exclusive agent for a period of June 17, 2014- September 30, 2014. Realtor agrees to use her best efforts to obtain a buyer for said property.

3. Property Address: LT 14 BLK 72 HYDE PARK MAIN SEC 6, Hyde Park Court, Harris County, Texas, commonly known as 1714 Driscoll St., Houston, Texas 77019.
   A. Improvements: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas and satellite dish system and equipment, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above-described real property.
   B. Accessories: The following described related accessories, if any: widow air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above-ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for; (i) satellite dish systems, (ii) garage doors, (iii) entry gates, and (iv) other improvements and accessories.

4. Listing Price: $495,000.00. Any sale is subject to court approval. All closing costs and fees (except Broker's fee) are to be paid by Buyer. Taxes shall be prorated to the date of closing and be deducted by escrow agent at closing and paid. All other sums are to be paid to the Receiver. Any expenses incurred by Realtor in connection with the sale shall be at her cost.



5.  Special conditions:

    A. Conveyance is to be made by Special Warranty Deed. Seller will convey such interest as she has by virtue of her position as Receiver.

    B. Sale is "AS IS, WITH ALL FAULTS" SELLER AND REALTOR MAKE NO REPRESENTATIONS OR WARRANTIES AS TO THE PROPERTY, ITS CONDITION, ITS TITLE OR ITS SUITABILITY FOR ANY PURPOSE. BUYER IS ADVISED TO SATISFY HIMSELF AS TO THE PROPERTY, ITS CONDITION AND SUITABILITY.

6.  Realtor's Fees: Seller agrees to pay Realtor a commission of 6% of the gross sales price. Realtor's fee shall be paid by seller pursuant to Court order dated 5/30/14. No fee shall be earned unless there has been a closing on the sale of the property. Should the Court not approve said fee or find a lesser fee proper, then that fee approved by the Court, if any, shall be the agreed fee to be paid to Realtor.

7.  Notices: all notices shall be in writing and effective when delivered. Notices to Realtor shall be to Joanne Roemer, 17250 El Camino Real, Houston, Texas 77058, Phone 281-486-1900, Fax 281-486-9201. Notice to Seller: Eva Engelhart, Receiver for Philippe Tanguy, Ross, Banks, May, Cron & Cavin, 2 Riverway, Suite 700, Houston, Texas 77056, Phone 713-626-1200, Fax 713-623-6014.

8.  This listing agreement contains the entire agreement between the parties and may not be changed except by written agreement, approved by the Court.


Dated this_____ day of_____, 2014.


_____
Realtor: Joanne Roemer
BHGRE Gary Greene


_____
Eva Engelhart in her capacity as Receiver for Philippe Tanguy

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)        4-28-2014
## ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)
NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are **Eva Engelhart, Court Appointed , Receiver** (Seller) and **Croix Custom Homes** (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements and accessories are collectively referred to as the "Property".
   A. LAND: Lot **14** Block **72** , **Hyde Park Main Sec 6** Addition, City of **Houston** , County of **Harris** , Texas, known as **1714 Driscoll St.** **77019** (address/zip code), or as described on attached exhibit.
   B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following permanently installed and built-in items, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
   C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.
   D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: _____

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing . . . . . . . . . . . . . . . $ **540,000.00**
   B. Sum of all financing described below (excluding any loan funding fee or mortgage insurance premium) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
   C. Sales Price (Sum of A and B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **540,000.00**

4. **FINANCING (Not for use with reverse mortgage financing):** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
   ☐ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount of $ **N/A** (excluding any loan funding fee or mortgage insurance premium).
      (1) Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s) (including, but not limited to appraisal, insurability and lender required repairs), Buyer may terminate this contract by giving notice to Seller prior to closing and the earnest money will be refunded to Buyer.
      (2) Credit Approval: (Check one box only)
      ☐ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Addendum for Credit Approval.
      ☒ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
   ☐ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
   ☐ C. SELLER FINANCING: A promissory note from Buyer to Seller of $ **N/A** , secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

TAR 1601     Initialed for identification by Buyer ___ and Seller ___     TREC NO. 20-12

BHGRE Gary Greene- Bay Area, 17250 El Camino Real Houston, TX 77058     Phone: 281.486.1900     Fax: 281.486.9201
Joanne Roemer
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     1714 Driscoll St

Contract Concerning _____**1714 Driscoll St.**_____
**Houston, TX   77019**        Page 2 of 9   4-28-2014
(Address of Property)

**5. EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit $**5,400.00**_____ as earnest money with _____**Texas American Title**_____ , as escrow agent, at _____**2000 Bering Dr., Ste #1000, Houston, TX,**_____ (address). Buyer shall deposit additional earnest money of $ _____ with escrow agent within _____ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**

A. TITLE POLICY: Seller shall furnish to Buyer at ☐ Seller's ☒ Buyer's expense an owner policy of title insurance (Title Policy) issued by **Texas American Title**_____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
(1) Restrictive covenants common to the platted subdivision in which the Property is located.
(2) The standard printed exception for standby fees, taxes and assessments.
(3) Liens created as part of the financing described in Paragraph 4.
(4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
(6) The standard printed exception as to marital rights.
(7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
(8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements: ☐ (i) will not be amended or deleted from the title policy; ☒ (ii) will be amended to read, "shortages in area" at the expense of ☒ Buyer ☐ Seller.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If, due to factors beyond Seller's control, the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)
☐ (1) Within _____ days after the effective date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date. If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐ Seller's ☐ Buyer's expense no later than 3 days prior to Closing Date.
☒ (2) Within ____**15**____ days after the effective date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
☐ (3) Within _____ days after the effective date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (8) above; or which prohibit the following use or activity: **Construction of One New Single Family Home**_____

Buyer must object the earlier of (i) the Closing Date or (ii) ____**5**____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender

TAR 1601    Initialed for identification by Buyer ___MC___ and Seller ___[initials]___    TREC NO. 20-12

Contract Concerning _____ **1714 Driscoll St.**
**Houston, TX 77019**     Page 3 of 9   4-28-2014
(Address of Property)

within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐ is ☒ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.
Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.
If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

TAR 1601    Initialed for identification by Buyer _____ and Seller _____    TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     1714 Driscoll St



(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

7. PROPERTY CONDITION:

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)

☒ (1) Buyer has received the Notice.

☐ (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any. (Check one box only)

☒ (1) Buyer accepts the Property As Is.

☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the the following specific repairs and treatments: _____

(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the

*Seller will not repair the property* (handwritten margin note)

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

Contract Concerning _____**1714 Driscoll St.**
**Houston, TX   77019**
(Address of Property) _____ Page 5 of 9   4-28-2014

Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company licensed by from TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ **N/A**_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**

A. The closing of the sale will be on or before _____**July 31**_____,2014_____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:

(1) Seller shall execute and deliver a ~~general warranty~~ deed *pursuant to Court order FSE* conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.

(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.

(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

(5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has received the security deposit and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**

A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.

B. Leases:

(1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.

(2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.) **This contract is subject to the approval of the 270th District Court, Harris County Texas.**

12. **SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:

(1) Expenses payable by Seller (Seller's Expenses):

(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; ~~one-half of escrow fee;~~ and other expenses payable by Seller under this contract.

(b) Seller shall also pay an amount not to exceed $ **N/A**_____ to be applied in the

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; adjusted origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

13. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

14. CASUALTY LOSS: If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

15. DEFAULT: If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. MEDIATION: It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. ATTORNEY'S FEES: A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding. *Parties shall pay their own attorney fees. ____*

18. ESCROW:

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. REPRESENTATIONS: All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

*The Seller makes no representations regarding the property.*

20. FEDERAL TAX REQUIREMENTS: If Seller is a "foreign person," as defined by applicable law or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. NOTICES: All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

To Buyer at: Croix Custom Homes

Telephone: (713) 569-5839
Facsimile: (713) 802-1629

E-mail: mcroix@croixhomes.com

To Seller at: Eva Engelhart, Court App
Receiver
Telephone: (713) 626-1200
Facsimile: (713) 623-6014

E-mail: eengelhart@rossbanks.com

22. AGREEMENT OF PARTIES: This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum for Credit Approval
☐ Seller Financing Addendum
☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
☐ Buyer's Temporary Residential Lease
☐ Loan Assumption Addendum
☐ Addendum for Sale of Other Property by Buyer
☐ Addendum for Reservation of Oil, Gas and Other Minerals
☐ Addendum for "Back-Up" Contract
☐ Addendum for Coastal Area Property

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
☐ Seller's Temporary Residential Lease
☐ Short Sale Addendum
☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
☒ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
☐ Addendum for Property in a Propane Gas System Service Area
☐ Other (list): _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        1714 Driscoll St

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

Contract Concerning _____ **1714 Driscoll St.** _____
**Houston, TX 77019**
(Address of Property) _____ Page 8 of 9  4-28-2014

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ **N/A** _____ (Option Fee) within 3 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ **N/A** _____ days after the effective date of this contract (Option Period). If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☐ will not be credited to the Sales Price at closing. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate licensees from giving legal advise. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: _____

Seller's
Attorney is: _____

_____

_____

Telephone: _____

Telephone: _____

Facsimile: _____

Facsimile: _____

E-mail: _____

E-mail: _____

EXECUTED the _____ day of ___ **6/20/2014** ___ , 20 _____ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

DocuSigned by:
*Mike Croix*
Buyer Croix Custom Homes

Seller Eva Engelhart, Court Appointed

Buyer _____

Seller Receiver

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-12. This form replaces TREC NO. 20-11.

TAR 1601

TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

1714 Driscoll St



APPROVED BY THE TEXAS REAL ESTATE COMMISSION                    10-10-11

## ADDENDUM FOR SELLER'S DISCLOSURE OF INFORMATION
## ON LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS
## AS REQUIRED BY FEDERAL LAW

CONCERNING THE PROPERTY AT _____ 1714 Driscoll St. _____ Houston _____

(Street Address and City)

**A. LEAD WARNING STATEMENT:** "Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-paint hazards is recommended prior to purchase."

**NOTICE: Inspector must be properly certified as required by federal law.**

**B. SELLER'S DISCLOSURE:**
1. PRESENCE OF LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS (check one box only):
   ☐ (a) Known lead-based paint and/or lead-based paint hazards are present in the Property (explain): _____
   ☒ (b) Seller has no actual knowledge of lead-based paint and/or lead-based paint hazards in the Property.
2. RECORDS AND REPORTS AVAILABLE TO SELLER (check one box only):
   ☐ (a) Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the Property (list documents): _____
   ☒ (b) Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the Property.

**C. BUYER'S RIGHTS** (check one box only):
   ☒ 1. Buyer waives the opportunity to conduct a risk assessment or inspection of the Property for the presence of lead-based paint or lead-based paint hazards.
   ☐ 2. Within ten days after the effective date of this contract, Buyer may have the Property inspected by inspectors selected by Buyer. If lead-based paint or lead-based paint hazards are present, Buyer may terminate this contract by giving Seller written notice within 14 days after the effective date of this contract, and the earnest money will be refunded to Buyer.

**D. BUYER'S ACKNOWLEDGMENT** (check applicable boxes):
   ☑ 1. Buyer has received copies of all information listed above.
   ☐ 2. Buyer has received the pamphlet *Protect Your Family from Lead in Your Home.*

**E. BROKERS' ACKNOWLEDGMENT:** Brokers have informed Seller of Seller's obligations under 42 U.S.C. 4852d to: (a) provide Buyer with the federally approved pamphlet on lead poisoning prevention; (b) complete this addendum; (c) disclose any known lead-based paint and/or lead-based paint hazards in the Property; (d) deliver all records and reports to Buyer pertaining to lead-based paint and/or lead-based paint hazards in the Property; (e) provide Buyer a period of up to 10 days to have the Property inspected; and (f) retain a completed copy of this addendum for at least 3 years following the sale. Brokers are aware of their responsibility to ensure compliance.

**F. CERTIFICATION OF ACCURACY:** The following persons have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| *Mike Croix* | 6/20/2014 | *[signature]* | |
| Buyer 15FDD9E5F3BF479... | Date | Seller | Date |
| Croix Custom Homes | | Eva Engelhart, Court Appointed | |
| | | | |
| Buyer | Date | Seller | Date |
| | | Receiver | |
| | | | |
| Other Broker | Date | Listing Broker | Date |
| Patricia Dajani | | Joanne Roemer | |

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov)

(TAR-1906) 10-10-11                                        TREC No. OP-L

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037



## TEXAS ASSOCIATION OF REALTORS®
## SELLER'S DISCLOSURE NOTICE
©Texas Association of REALTORS®, Inc. 2014

Section 5.008, Property Code requires a seller of residential property of not more than one dwelling unit to deliver a Seller's Disclosure Notice to a buyer on or before the effective date of a contract. **This form complies with and contains additional disclosures which exceed the minimum disclosures required by the Code.**

CONCERNING THE PROPERTY AT _____ 1714 Driscoll St. Houston, TX 77019

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

Seller ☐ is ☐ is not occupying the Property. If unoccupied (by Seller), how long since Seller has occupied the Property?
☐ _____ or ☒ never occupied the Property ____

**Section 1.** The Property has the items marked below: (Mark Yes (Y), No (N), or Unknown (U).)
*This notice does not establish the items to be conveyed. The contract will determine which items will & will not convey.*

| Item | Y | N | U | Item | Y | N | U | Item | Y | N | U |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cable TV Wiring | | | | Liquid Propane Gas: | | | | Pump: ☐ sump ☐ grinder | | | |
| Carbon Monoxide Det. | | | | -LP Community (Captive) | | | | Rain Gutters | | | |
| Ceiling Fans | | | | -LP on Property | | | | Range/Stove | | | |
| Cooktop | | | | Hot Tub | | | | Roof/Attic Vents | | | |
| Dishwasher | | | | Intercom System | | | | Sauna | | | |
| Disposal | | | | Microwave | | | | Smoke Detector | | | |
| Emergency Escape Ladder(s) | | | | Outdoor Grill | | | | Smoke Detector – Hearing Impaired | | | |
| Exhaust Fans | | | | Patio/Decking | | | | Spa | | | |
| Fences | | | | Plumbing System | | | | Trash Compactor | | | |
| Fire Detection Equip. | | | | Pool | | | | TV Antenna | | | |
| French Drain | | | | Pool Equipment | | | | Washer/Dryer Hookup | | | |
| Gas Fixtures | | | | Pool Maint. Accessories | | | | Window Screens | | | |
| Natural Gas Lines | | | | Pool Heater | | | | Public Sewer System | | | |

| Item | Y | N | U | Additional Information |
|---|---|---|---|---|
| Central A/C | | | | ☐ electric ☐ gas number of units: _____ |
| Evaporative Coolers | | | | number of units: _____ |
| Wall/Window AC Units | | | | number of units: _____ |
| Attic Fan(s) | | | | if yes, describe: _____ |
| Central Heat | | | | ☐ electric ☐ gas number of units: _____ |
| Other Heat | | | | if yes, describe: _____ |
| Oven | | | | number of ovens: _____ ☐ electric ☐ gas ☐ other: _____ |
| Fireplace & Chimney | | | | ☐ wood ☐ gas logs ☐ mock ☐ other: _____ |
| Carport | | | | ☐ attached ☐ not attached |
| Garage | | | | ☐ attached ☐ not attached |
| Garage Door Openers | | | | number of units: _____ number of remotes: _____ |
| Satellite Dish & Controls | | | | ☐ owned ☐ leased from _____ |
| Security System | | | | ☐ owned ☐ leased from _____ |
| Water Heater | | | | ☐ electric ☐ gas ☐ other: _____ number of units: _____ |
| Water Softener | | | | ☐ owned ☐ leased from _____ |
| Underground Lawn Sprinkler | | | | ☐ automatic ☐ manual areas covered: _____ |
| Septic / On-Site Sewer Facility | | | | if yes, attach Information About On-Site Sewer Facility (TAR-1407) |

(TAR-1406) 01-01-14     Initialed by: Buyer: ____, ____ and Seller: ____     Page 1 of 5

BHGRE Gary Greene- Bay Area, 17250 El Camino Real Houston, TX 77058     Phone: 281.486.1900     Fax: 281.486.9201     1714 Driscoll St
Joanna Roemer     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

Concerning the Property at _____ 1714 Driscoll St. Houston, TX 77019 _____

Water supply provided by: ☐ city ☐ well ☐ MUD ☐ co-op ☒ unknown ☐ other: _____

Was the Property built before 1978? ☐ yes ☐ no ☒ unknown
(If yes, complete, sign, and attach TAR-1906 concerning lead-based paint hazards).

Roof Type:_____ Age:_____ (approximate)

Is there an overlay roof covering on the Property (shingles or roof covering placed over existing shingles or roof covering)?
☐ yes ☐ no ☐ unknown

Are you (Seller) aware of any of the items listed in this Section 1 that are not in working condition, that have defects, or are need of repair? ☐ yes ☒ no If yes, describe (attach additional sheets if necessary): _____

_____
_____

Section 2. Are you (Seller) aware of any defects or malfunctions in any of the following?: (Mark Yes (Y) if you are aware and No (N) if you are not aware.)

| Item | Y | N |
|---|---|---|
| Basement | | |
| Ceilings | | |
| Doors | | |
| Driveways | | |
| Electrical Systems | | |
| Exterior Walls | | |

| Item | Y | N |
|---|---|---|
| Floors | | |
| Foundation / Slab(s) | | |
| Interior Walls | | |
| Lighting Fixtures | | |
| Plumbing Systems | | |
| Roof | | |

| Item | Y | N |
|---|---|---|
| Sidewalks | | |
| Walls / Fences | | |
| Windows | | |
| Other Structural Components | | |
| | | |
| | | |

If the answer to any of the items in Section 2 is yes, explain (attach additional sheets if necessary): _____

_____
_____

Section 3. Are you (Seller) aware of any of the following conditions: (Mark Yes (Y) if you are aware and No (N) if you are not aware.)

| Condition | Y | N |
|---|---|---|
| Aluminum Wiring | | |
| Asbestos Components | | |
| Diseased Trees: ☐ oak wilt ☐ _____ | | |
| Endangered Species/Habitat on Property | | |
| Fault Lines | | |
| Hazardous or Toxic Waste | | |
| Improper Drainage | | |
| Intermittent or Weather Springs | | |
| Landfill | | |
| Lead-Based Paint or Lead-Based Pt. Hazards | | |
| Encroachments onto the Property | | |
| Improvements encroaching on others' property | | |
| Located in 100-year Floodplain | | |
| Located in Floodway | | |
| Present Flood Ins. Coverage (If yes, attach TAR-1414) | | |
| Previous Flooding into the Structures | | |
| Previous Flooding onto the Property | | |
| Located in Historic District | | |
| Historic Property Designation | | |
| Previous Use of Premises for Manufacture of Methamphetamine | | |

| Condition | Y | N |
|---|---|---|
| Previous Foundation Repairs | | |
| Previous Roof Repairs | | |
| Other Structural Repairs | | |
| Radon Gas | | |
| Settling | | |
| Soil Movement | | |
| Subsurface Structure or Pits | | |
| Underground Storage Tanks | | |
| Unplatted Easements | | |
| Unrecorded Easements | | |
| Urea-formaldehyde Insulation | | |
| Water Penetration | | |
| Wetlands on Property | | |
| Wood Rot | | |
| Active infestation of termites or other wood destroying insects (WDI) | | |
| Previous treatment for termites or WDI | | |
| Previous termite or WDI damage repaired | | |
| Previous Fires | | |
| Termite or WDI damage needing repair | | |
| Single Blockable Main Drain in Pool/Hot Tub/Spa* | | |

(TAR-1406) 01-01-14    Initialed by: Buyer: _____, _____ and Seller: _____, _____    Page 2 of 5

Concerning the Property at _____  1714 Driscoll St.
Houston, TX 77019

If the answer to any of the items in Section 3 is yes, explain (attach additional sheets if necessary): _____

_____

_____

_____

\*A single blockable main drain may cause a suction entrapment hazard for an individual.

**Section 4.** Are you (Seller) aware of any item, equipment, or system in or on the Property that is in need of repair, which has not been previously disclosed in this notice? ☐ yes ☒ no  If yes, explain (attach additional sheets if necessary): _____

_____

_____

_____

**Section 5.** Are you (Seller) aware of any of the following (Mark Yes (Y) if you are aware. Mark No (N) if you are not aware.)

| Y | N | |
|---|---|---|
| ☐ | ☒ | Room additions, structural modifications, or other alterations or repairs made without necessary permits or not in compliance with building codes in effect at the time. |
| ☐ | ☒ | Homeowners' associations or maintenance fees or assessments. If yes, complete the following: Name of association: _____ Manager's name: _____ Phone: _____ Fees or assessments are: $_____ per _____ and are: ☐ mandatory ☐ voluntary Any unpaid fees or assessment for the Property? ☐ yes ($_____) ☐ no If the Property is in more than one association, provide information about the other associations below or attach information to this notice. |
| ☐ | ☐ | Any common area (facilities such as pools, tennis courts, walkways, or other) co-owned in undivided interest with others. If yes, complete the following: Any optional user fees for common facilities charged? ☐ yes ☐ no If yes, describe: _____ |
| ☐ | ☒ | Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property. |
| ☐ | ☒ | Any lawsuits or other legal proceedings directly or indirectly affecting the Property. (Includes, but is not limited to: divorce, foreclosure, heirship, bankruptcy, and taxes.) |
| ☐ | ☒ | Any death on the Property except for those deaths caused by: natural causes, suicide, or accident unrelated to the condition of the Property. |
| ☐ | ☐ | Any condition on the Property which materially affects the health or safety of an individual. |
| ☐ | ☐ | Any repairs or treatments, other than routine maintenance, made to the Property to remediate environmental hazards such as asbestos, radon, lead-based paint, urea-formaldehyde, or mold. If yes, attach any certificates or other documentation identifying the extent of the remediation (for example, certificate of mold remediation or other remediation). |
| ☐ | ☐ | Any rainwater harvesting system located on the property that is larger than 500 gallons and that uses a public water supply as an auxiliary water source. |
| ☐ | ☒ | The Property is located in a propane gas system service area owned by a propane distribution system retailer. |

(TAR-1406) 01-01-14          Initialed by: Buyer: [MC] , _____  and Seller: _____ , _____          Page 3 of 5

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

Concerning the Property at _____ 1714 Driscoll St.
Houston, TX 77019

If the answer to any of the items in Section 5 is yes, explain (attach additional sheets if necessary): _____
_____
_____
_____
_____

**Section 6.** Seller ☐ has ☐ has not attached a survey of the Property.

**Section 7.** Within the last 4 years, have you (Seller) received any written inspection reports from persons who regularly provide inspections and who are either licensed as inspectors or otherwise permitted by law to perform inspections? ☐ yes ☐ no   If yes, attach copies and complete the following:

| Inspection Date | Type | Name of Inspector | No. of Pages |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

*Note: A buyer should not rely on the above-cited reports as a reflection of the current condition of the Property. A buyer should obtain inspections from inspectors chosen by the buyer.*

**Section 8.** Check any tax exemption(s) which you (Seller) currently claim for the Property:
☐ Homestead      ☐ Senior Citizen      ☐ Disabled
☐ Wildlife Management   ☐ Agricultural    ☐ Disabled Veteran
☐ Other:_____              ☒ Unknown

**Section 9.** Have you (Seller) ever filed a claim for damage to the Property with any insurance provider? ☐ yes ☒ no

**Section 10.** Have you (Seller) ever received proceeds for a claim for damage to the Property (for example, an insurance claim or a settlement or award in a legal proceeding) and not used the proceeds to make the repairs for which the claim was made? ☐ yes ☒ no   If yes, explain: _____
_____
_____

**Section 11.** Does the property have working smoke detectors installed in accordance with the smoke detector requirements of Chapter 766 of the Health and Safety Code?* ☒ unknown ☐ no ☐ yes. If no or unknown, explain. (Attach additional sheets if necessary): _____
_____

*Chapter 766 of the Health and Safety Code requires one-family or two-family dwellings to have working smoke detectors installed in accordance with the requirements of the building code in effect in the area in which the dwelling is located, including performance, location, and power source requirements. If you do not know the building code requirements in effect in your area, you may check unknown above or contact your local building official for more information.*

*A buyer may require a seller to install smoke detectors for the hearing impaired if: (1) the buyer or a member of the buyer's family who will reside in the dwelling is hearing-impaired; (2) the buyer gives the seller written evidence of the hearing impairment from a licensed physician; and (3) within 10 days after the effective date, the buyer makes a written request for the seller to install smoke detectors for the hearing-impaired and specifies the locations for installation. The parties may agree who will bear the cost of installing the smoke detectors and which brand of smoke detectors to install.*

(TAR-1406) 01-01-14    Initialed by: Buyer: MC ____ and Seller: ____    Page 4 of 5
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    1714 Driscoll St

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

Concerning the Property at _____ 1714 Driscoll St.
Houston, TX 77019

Seller acknowledges that the statements in this notice are true to the best of Seller's belief and that no person, including the broker(s), has instructed or influenced Seller to provide inaccurate information or to omit any material information.

Signature of Seller _____ Date 6/20/14  Signature of Seller _____ Date 6/20/14

Printed Name: Eva Engelhart, Court Appointed   Printed Name: Receiver

## ADDITIONAL NOTICES TO BUYER:

(1) The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain zip code areas. To search the database, visit www.txdps.state.tx.us . For information concerning past criminal activity in certain areas or neighborhoods, contact the local police department.

(2) If the property is located in a coastal area that is seaward of the Gulf Intracoastal Waterway or within 1,000 feet of the mean high tide bordering the Gulf of Mexico, the property may be subject to the Open Beaches Act or the Dune Protection Act (Chapter 61 or 63, Natural Resources Code, respectively) and a beachfront construction certificate or dune protection permit may be required for repairs or improvements. Contact the local government with ordinance authority over construction adjacent to public beaches for more information.

(3) If you are basing your offers on square footage, measurements, or boundaries, you should have those items independently measured to verify any reported information.

(4) The following providers currently provide service to the property:

| | | |
|---|---|---|
| Electric: _____ | phone #: _____ |
| Sewer: _____ | phone #: _____ |
| Water: _____ | phone #: _____ |
| Cable: _____ | phone #: _____ |
| Trash: _____ | phone #: _____ |
| Natural Gas: _____ | phone #: _____ |
| Phone Company: _____ | phone #: _____ |
| Propane: _____ | phone #: _____ |

(5) This Seller's Disclosure Notice was completed by Seller as of the date signed. The brokers have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY.

The undersigned Buyer acknowledges receipt of the foregoing notice.

DocuSigned by:
Mike Croix   6/20/2014
Signature of Buyer   Date   Signature of Buyer   Date
Printed Name: Croix Custom Homes   Printed Name: _____

(TAR-1406) 01-01-14

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

1714 Driscoll St

**B. Type of Loan**

| | | | 6. File Number: | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|---|---|
| 1. [ ] FHA | 2. [ ] RHS | 3. [ ] Conv. Unins. | | | |
| 4. [ ] VA | 5. [ ] Conv. Ins. | | 7495-14-1387 | | |

C.

NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside of the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| CROIX CUSTOM HOMES, INC., A TEXAS CORPORATION<br><br>P.O. BOX 132977<br>THE WOODLANDS, TX 77393 | EVA ENGELHART, RECEIVER, APPOINTED IN CAUSE NO. 2013-67779, 270TH JUDICIAL DISTRICT, HARRIS COUNTY, TEXAS | |

| G. Property Location | H. Settlement Agent |
|---|---|
| 1714 DRISCOLL STREET, HOUSTON, TX 77019 | TEXAS AMERICAN TITLE COMPANY |

| | | |
|---|---|---|
| COUNTY: HARRIS<br>LOT: 14<br>BLOCK: 72<br>SUBDIVISION: HYDE PARK MAIN, SECTION 6 | Place of Settlement<br>2000 BERING DRIVE, SUITE 1000<br>HOUSTON, TX 77057 | I. Settlement Date 07/31/2014 |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract Sales Price | $540,000.00 | 401. Contract Sales Price | $540,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower | $4,260.39 | 403. | |
| **Adjustments For Items Paid By Seller In Advance** | | **Adjustments For Items Paid By Seller in Advance** | |
| 113. City/Town Taxes | | 413. City/Town Taxes | |
| 114. County Taxes | | 414. County Taxes | |
| 118. Assessments | | 418. Assessments | |
| 119. | | 419. | |
| **120. Gross Amount Due From Borrower** | $544,260.39 | **420. Gross Amount Due To Seller** | $540,000.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | $5,400.00 | 501. Excess Deposits | |
| 202. Principal | | **502. Settlement Charges to Seller** | $32,545.99 |
| 203. Existing Loan(s) Taken Subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. | | 504. Payoff First Mortgage to Nationstar Mortgage (WRITTEN PAYOFF STATEMENT NEEDED) | $168,083.28 |
| 205. | | | |
| 206. | | 505. Payoff Second Mortgage to CitiMortgage, Inc. (WRITTEN PAYOFF REQUESTED) | $23,484.99 |
| **Adjustments For Items Unpaid By Seller** | | 506. Earnest money retained by Agent | |
| 210. | | **Adjustments For Items Unpaid By Seller** | |
| 211. | | 510. | |
| 212. | | 511. | |
| 213. City/Town Taxes | | 512. | |
| 214. County Taxes | | 513. City/Town Taxes | |
| 216. All Taxes 11,554.51/yr 1/1/2014 to 7/31/2014 | $6,679.46 | 514. County Taxes | |
| 218. Assessments | | 516. All Taxes 11,554.51/yr 1/1/2014 to 7/31/2014 | $6,679.46 |
| 219. | | 518. Assessments | |
| | | 519. | |
| **220. Buyer's Total Credits** | $12,079.46 | | |
| | | **520. Seller's Total Charges** | $230,793.72 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount Due From Borrower (line 120) | $544,260.39 | 601. Gross Amount Due To Seller (line 420) | $540,000.00 |
| 302. Less Amounts Paid By/For Borrower (line 220) | $12,079.46 | 602. Less Deductions In Amt. Due To Seller (line 520) | $230,793.72 |
| **303. Cash [ X ] From [ ] To Borrower** | $532,180.93 | **603. Cash [ X ] To [ ] From Seller** | $309,206.28 |



Preliminary (DRAFT)

| | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|
| **700. Total Sale Commission 540000.00 @ 6 % = 32400.00** | | | |
| Division of Commission (line 700) As Follows: | | | |
| 701. $16200.00 to BHGRE Gary Greene | | | |
| 702. $16200.00 to Keller Williams Realty | | | |
| 703. Commission paid at settlement | | | $32,400.00 |
| **800. Items Payable In Connection With Loan** | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report | | | |
| 805. Lender Inspection Fee | | | |
| **900. Items Required By Lender To Be Paid In Advance** | | | |
| 901. Interest | | | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Ins. Premium | | | |
| **1000. Reserves Deposited With Lender** | | | |
| 1001. Hazard Ins. Reserve | | | |
| 1002. Mortgage Ins. Reserve | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1010. Aggregate Accounting Adjustment | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement/Closing Fee | | | |
| 1102. Abstract or Title Search | | | |
| 1103. Title examination | | | |
| 1104. Title Insurance Binder | | | |
| 1105. Document preparation | | | |
| 1106. Notary fee | | | |
| 1107. Attorney Fee | | | |
| 1108. Title Ins. Total to Texas American Title Company | | $3,313.00 | |
| 1109. Lender's Coverage | | | |
| 1110. Owner's Coverage (540000.00) (Texas American Title Company, 100.00 %, 3313.00) | | | |
| 1111. Endorsement (Texas American Title Company, 100.00 %, 165.65) | | $165.65 | |
| 1120. Escrow Fee to Texas American Title Company | | $50.00 | |
| 1138. Tax Certificate to Processing Solutions, Inc. | | | $15.99 |
| 1146. Warranty Deed to Texas American Title Company | | | $110.00 |
| 1152. Texas Policy Guaranty Fee - Owner to TATCO/F.B.O PGF | | $1.80 | |
| **1200. Government Recording And Transfer Charges** | | | |
| 1201. Recording Fees for Deed 24.00; Recording Fees for Release; Recording Fees for Mortgage | | $24.00 | |
| 1239. Other Recording Fees - None Notice to Purchaser (Seller Charge) to Texas American Title Company | | | $20.00 |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey to Meridian Surveying and Mapping, Inc. | | $705.94 | |
| 1302. Pest inspection | | | |
| **1400. Total Settlement Charges** | | $4,260.39 | $32,545.99 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief it is true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

BUYERS

Croix Custom Homes, Inc., a Texas corporation

By: Michael Croix, President

SELLERS

_____
Eva Engelhart, Receiver, appointed in Cause No. 2013-67779, 270th Judicial District, Harris County, Texas

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent

_____

Date

07/31/2014

APPENDIX TAB B

Third Amended Order to Sell Property at 1714 Driscoll Street

NO. 2013-67779

| | | |
|---|---|---|
| WILLIAM G WEST, | § | IN THE DISTRICT COURT OF |
| AS CHAPTER 7 TRUSTEE OF | § | |
| RICHARD DAVIS, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| PHILIPPE TANGUY, 13,500 AIR | § | |
| EXPRESS, LLC, AND 13,500 AIR | § | |
| EXPRESS, LP, | § | |
| Defendants | § | 270TH JUDICIAL DISTRICT |

## THIRD AMENDED ORDER TO SELL PROPERTY AT 1714 DRISCOLL ST.

Plaintiff's Motion To Sell Real Property at 1714 Driscoll St. having been presented, and it appearing to the Court that this motion in all respects should be granted.

IT IS THEREFORE ORDERED:

1. The Received is authorized to sell the property at 1714 Driscoll St. per the contract attached to the Motion and hereto as Exhibit C.

2. Any encumbrances, filed/asserted against the property at 1714 Driscoll St. by Philippe Tanguy, 13500 Air Express LLC, and 13,500 Air Express L.P., and/or any of their agents, entities controlled by him, etc. are ordered void and/or released as a matter of law.

3. Philippe Tanguy is to instruct Nationstar and CitiBank mortgages to provide current payoffs to the Receiver and her title company and cooperate fully with the Receiver and her title company.

4. That a Receiver's Deed for the property at 1714 Driscoll St., is a valid legal deed by which good title is to be transferred at closing;

SIGNED this the __10__ day of __October_____, 2014.

_____
Judge Presiding

APPENDIX B

APPROVED:

ROSS, BANKS, MAY, CRON & CAVIN, P.C.

BY: _____

Eva S. Engelhart #00796513
2 Riverway, Suite 700
Houston, TX 77056-1918
713/626-1200 (PHONE)
713/623-6014 (FAX)

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)  4-28-2014

# ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)

NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are __Eva Engelhart, Court Appointed, Receiver__ (Seller) and _____ __Croix Custom Homes__ _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements and accessories are collectively referred to as the "Property".
   A. **LAND:** Lot __14__ Block __72__, __Hyde Park Main Sec 6__ Addition, City of __Houston__, County of __Harris__, Texas, known as __1714 Driscoll St.__ __77019__ (address/zip code), or as described on attached exhibit.
   B. **IMPROVEMENTS:** The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following permanently installed and built-in items, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
   C. **ACCESSORIES:** The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.
   D. **EXCLUSIONS:** The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: _____

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing .................... $ _____
   B. Sum of all financing described below (excluding any loan funding fee or mortgage insurance premium) ................................ $ __540,000.00__
   C. Sales Price (Sum of A and B) ................................................. $ __540,000.00__

4. **FINANCING** (Not for use with reverse mortgage financing): The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
   ☐ A. **THIRD PARTY FINANCING:** One or more third party mortgage loans in the total amount of $ __N/A__ (excluding any loan funding fee or mortgage insurance premium).
      (1) **Property Approval:** If the Property does not satisfy the lenders' underwriting requirements for the loan(s) (including, but not limited to appraisal, insurability and lender required repairs), Buyer may terminate this contract by giving notice to Seller prior to closing and the earnest money will be refunded to Buyer.
      (2) **Credit Approval:** (Check one box only)
      ☐ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Addendum for Credit Approval.
      ☒ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
   ☐ B. **ASSUMPTION:** The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
   ☐ C. **SELLER FINANCING:** A promissory note from Buyer to Seller of $ __N/A__, secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

TAR 1601   Initialed for Identification by Buyer __ml__ and Seller _____   TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   1714 Driscoll St



Contract Concerning _____ **1714 Driscoll St.**
**Houston, TX 77019** _____ Page 2 of 9 4-28-2014
(Address of Property)

**5. EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit
$5,400.00 as earnest money with __Texas American Title__ , as escrow
agent, at __2000 Bering Dr., Ste #1000, Houston, TX.__ (address). Buyer
shall deposit additional earnest money of $ _____ with escrow agent within
_____ days after the effective date of this contract. If Buyer fails to deposit the earnest money as
required by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**

A. **TITLE POLICY:** Seller shall furnish to Buyer at ☐ Seller's ☒ Buyer's expense an owner policy
of title insurance (Title Policy) issued by __Texas American Title__ (Title
Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against
loss under the provisions of the Title Policy, subject to the promulgated exclusions (including
existing building and zoning ordinances) and the following exceptions:
(1) Restrictive covenants common to the platted subdivision in which the Property is located.
(2) The standard printed exception for standby fees, taxes and assessments.
(3) Liens created as part of the financing described in Paragraph 4.
(4) Utility easements created by the dedication deed or plat of the subdivision in which the
Property is located.
(5) Reservations or exceptions otherwise permitted by this contract or as may be approved
by Buyer in writing.
(6) The standard printed exception as to marital rights.
(7) The standard printed exception as to waters, tidelands, beaches, streams, and related
matters.
(8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary
lines, encroachments or protrusions, or overlapping improvements: ☐ (i) will not be
amended or deleted from the this policy; ☒ (ii) will be amended to read, "shortages in area"
at the expense of ☒ Buyer ☐ Seller.

B. **COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract,
Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's
expense, legible copies of restrictive covenants and documents evidencing exceptions in the
Commitment (Exception Documents) other than the standard printed exceptions. Seller
authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer
at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are
not delivered to Buyer within the specified time, the time for delivery will be automatically
extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If, due to
factors beyond Seller's control, the Commitment and Exception Documents are not delivered
within the time required, Buyer may terminate this contract and the earnest money will be
refunded to Buyer.

C. **SURVEY:** The survey must be made by a registered professional land surveyor acceptable to
the Title Company and Buyer's lender(s). (Check one box only)
☐ (1) Within _____ days after the effective date of this contract, Seller shall furnish to Buyer
and Title Company Seller's existing survey of the Property and a Residential Real Property
Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). If Seller
fails to furnish the existing survey or affidavit within the time prescribed, Buyer
shall obtain a new survey at Seller's expense no later than 3 days prior to Closing
Date. If the existing survey or affidavit is not acceptable to Title Company or Buyer's
lender(s), Buyer shall obtain a new survey at ☐ Seller's ☐ Buyer's expense no later than 3
days prior to Closing Date.
☒ (2) Within __15__ days after the effective date of this contract, Buyer shall obtain a new
survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual
receipt or the date specified in this paragraph, whichever is earlier.
☐ (3) Within _____ days after the effective date of this contract, Seller, at Seller's expense
shall furnish a new survey to Buyer.

D. **OBJECTIONS:** Buyer may object in writing to defects, exceptions, or encumbrances to title:
disclosed on the survey other than items 6A(1) through (7) above; disclosed in the
Commitment other than items 6A(1) through (8) above; or which prohibit the following use
or activity: __Construction of One New Single Family Home__

Buyer must object the earlier of (i) the Closing Date or (ii) __5__ days after Buyer receives
the Commitment, Exception Documents, and the survey. Buyer's failure to object within the
time allowed will constitute a waiver of Buyer's right to object; except that the requirements
in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated
to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender

TAR 1601    Initialed for Identification by Buyer _____ and Seller _____    **TREC NO. 20-12**

DocuSign Envelope ID: EBCAE6EE-88AE-4B27-883A-838C767B1037

within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐ is ☒ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.

Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.

If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

DocuSign Envelope ID: EBCAE6EE-98AE-4827-883A-838C757B1037



(7) **PUBLIC IMPROVEMENT DISTRICTS:** If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) **TRANSFER FEES:** If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) **PROPANE GAS SYSTEM SERVICE AREA:** If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

7. **PROPERTY CONDITION:**

A. **ACCESS, INSPECTIONS AND UTILITIES:** Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. **SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):** (Check one box only)

☒ (1) Buyer has received the Notice.

☐ (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. **SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** is required by Federal law for a residential dwelling constructed prior to 1978.

D. **ACCEPTANCE OF PROPERTY CONDITION:** "As is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)

☒ (1) Buyer accepts the Property As is.

☐ (2) Buyer accepts the Property As is provided Seller, at Seller's expense, shall complete the the following specific repairs and treatments: _____

_____
(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. **LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. **COMPLETION OF REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

G. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the

*[handwritten margin note: Seller will not repair the property]*

TAR 1601   Initialed for Identification by Buyer _____ and Seller _____   TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   1714 Driscoll St

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-863A-838C76781037

Contract Concerning _____ **1714 Driscoll St.**
**Houston, TX 77019** _____ Page 5 of 9  4-28-2014
(Address of Property)

Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company licensed by from TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ **N/A** _____, Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**
   A. The closing of the sale will be on or before _____ **July 31** _____, **2014** _____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
   B. At closing:
      (1) Seller shall execute and deliver a ~~general~~ warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property. *pursuant to Court order free*
      (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
      (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
      (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
      (5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has received the security deposit and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**
   A. **Buyer's Possession:** Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.
   B. **Leases:**
      (1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.
      (2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.) **This contract is subject to the approval of the 270th District Court, Harris County Texas.**

12. **SETTLEMENT AND OTHER EXPENSES:**
   A. The following expenses must be paid at or prior to closing:
      (1) Expenses payable by Seller (Seller's Expenses):
         (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; ~~one-half of escrow fee;~~ and other expenses payable by Seller under this contract.
         (b) Seller shall also pay an amount not to exceed $ **N/A** _____ to be applied in the

TAR 1601    Initialed for Identification by Buyer _____ _____ and Seller _____    TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    1714 Driscoll St

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C767B1037

following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; adjusted origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

13. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

14. CASUALTY LOSS: If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

15. DEFAULT: If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. MEDIATION: It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. ATTORNEY'S FEES: A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding. *Parties shall pay their own attorney fees*

18. ESCROW:

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of

TAR 1601   Initialed for Identification by Buyer _____ and Seller _____   TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   1714 Driscoll St.

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C75781037

the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent, for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

*The seller makes no representations or warranty, sold as is, property.*

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

To Buyer at: ___Croix Custom Homes___

Telephone: ___(713) 569-9939___
Facsimile: ___(713) 802-1629___

E-mail: ___mcroix@croixhomes.com___

To Seller at: ___Eva Engelhart, Court App___
___Receiver___
Telephone: ___(713) 626-1200___
Facsimile: ___(713) 623-6014___

E-mail: ___eengelhart@rossbanks.com___

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum for Credit Approval

☐ Seller Financing Addendum

☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☒ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Other (list): _____

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-838C757B1037

Contract Concerning _____ **1714 Driscoll st.**
**Houston, TX 77019** _____ Page 8 of 9  4-28-2014
(Address of Property)

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ **N/A** _____ (Option Fee) within 3 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ **N/A** _____ days after the effective date of this contract (Option Period). If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☐ will not be credited to the Sales Price at closing. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate licensees from giving legal advise. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: _____

Seller's
Attorney is: _____

Telephone: _____

Telephone: _____

Facsimile: _____

Facsimile: _____

E-mail: _____

E-mail: _____

EXECUTED the _____ day of **6/20/2014** _____ , 20 _____ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_Mike Craig_
Buyer Craig Custom Homes

Seller Eva Engelhart, Court Appointed

Buyer

Seller Receiver

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-12. This form replaces TREC NO. 20-11.

TAR 1601

TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

1714 Driscoll St

DocuSign Envelope ID: EBCAE8EE-98AE-4B27-883A-838C757B1037



# TEXAS ASSOCIATION OF REALTORS®
## SELLER'S DISCLOSURE NOTICE
©Texas Association of REALTORS®, Inc. 2014

Section 5.008, Property Code requires a seller of residential property of not more than one dwelling unit to deliver a Seller's Disclosure Notice to a buyer on or before the effective date of a contract. This form complies with and contains additional disclosures which exceed the minimum disclosures required by the Code.

CONCERNING THE PROPERTY AT ___1714 Driscoll St.___
___Houston, TX 77019___

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

Seller ☐ is ☐ is not occupying the Property. If unoccupied (by Seller), how long since Seller has occupied the Property?
☐ _____; or ☒ never occupied the Property

Section 1.  The Property has the items marked below: (Mark Yes (Y), No (N), or Unknown (U).)
*This notice does not establish the items to be conveyed. The contract will determine which items will & will not convey.*

| Item | Y | N | U |
|---|---|---|---|
| Cable TV Wiring | | | |
| Carbon Monoxide Det. | | | |
| Ceiling Fans | | | |
| Cooktop | | | |
| Dishwasher | | | |
| Disposal | | | |
| Emergency Escape Ladder(s) | | | |
| Exhaust Fans | | | |
| Fences | | | |
| Fire Detection Equip. | | | |
| French Drain | | | |
| Gas Fixtures | | | |
| Natural Gas Lines | | | |

| Item | Y | N | U |
|---|---|---|---|
| Liquid Propane Gas: | | | |
| -LP Community (Captive) | | | |
| -LP on Property | | | |
| Hot Tub | | | |
| Intercom System | | | |
| Microwave | | | |
| Outdoor Grill | | | |
| Patio/Decking | | | |
| Plumbing System | | | |
| Pool | | | |
| Pool Equipment | | | |
| Pool Maint. Accessories | | | |
| Pool Heater | | | |

| Item | Y | N | U |
|---|---|---|---|
| Pump: ☐ sump ☐ grinder | | | |
| Rain Gutters | | | |
| Range/Stove | | | |
| Roof/Attic Vents | | | |
| Sauna | | | |
| Smoke Detector | | | |
| Smoke Detector – Hearing Impaired | | | |
| Spa | | | |
| Trash Compactor | | | |
| TV Antenna | | | |
| Washer/Dryer Hookup | | | |
| Window Screens | | | |
| Public Sewer System | | | |

| Item | Y | N | U | Additional Information |
|---|---|---|---|---|
| Central A/C | | | | ☐ electric ☐ gas   number of units: _____ |
| Evaporative Coolers | | | | number of units: _____ |
| Wall/Window AC Units | | | | number of units: _____ |
| Attic Fan(s) | | | | If yes, describe: _____ |
| Central Heat | | | | ☐ electric ☐ gas   number of units: _____ |
| Other Heat | | | | If yes, describe: _____ |
| Oven | | | | number of ovens: _____ ☐ electric ☐ gas ☐ other: _____ |
| Fireplace & Chimney | | | | ☐ wood ☐ gas logs ☐ mock ☐ other: _____ |
| Carport | | | | ☐ attached ☐ not attached |
| Garage | | | | ☐ attached ☐ not attached |
| Garage Door Openers | | | | number of units: _____   number of remotes: _____ |
| Satellite Dish & Controls | | | | ☐ owned ☐ leased from _____ |
| Security System | | | | ☐ owned ☐ leased from _____ |
| Water Heater | | | | ☐ electric ☐ gas ☐ other: _____   number of units: _____ |
| Water Softener | | | | ☐ owned ☐ leased from _____ |
| Underground Lawn Sprinkler | | | | ☐ automatic ☐ manual   areas covered: _____ |
| Septic / On-Site Sewer Facility | | | | If yes, attach Information About On-Site Sewer Facility (TAR-1407) |

SHCXE Guy Ocean Bay Area, 17250 El Camino Real Houston, TX 77058
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com
Phone: 281.431.1965    Fax: 281.488.2067    1714 Driscoll St

DocuSign Envelope ID: EBCAE5EE-98AE-4B27-883A-838C75781037

Concerning the Property at _____ 1714 Driscoll St.
Houston, TX 77019 _____

Water supply provided by: ☐ city ☐ well ☐ MUD ☐ co-op ☑ unknown ☐ other: _____
Was the Property built before 1978? ☐ yes ☐ no ☑ unknown
   (If yes, complete, sign, and attach TAR-1906 concerning lead-based paint hazards).
Roof Type: _____ Age: _____ (approximate)
Is there an overlay roof covering on the Property (shingles or roof covering placed over existing shingles or roof covering)?
☐ yes ☐ no ☐ unknown

Are you (Seller) aware of any of the items listed in this Section 1 that are not in working condition, that have defects, or are need of repair? ☐ yes ☐ no If yes, describe (attach additional sheets if necessary): _____
_____
_____

**Section 2.** Are you (Seller) aware of any defects or malfunctions in any of the following?: (Mark Yes (Y) if you are aware and No (N) if you are not aware.)

| Item | Y | N | | Item | Y | N | | Item | Y | N |
|------|---|---|---|------|---|---|---|------|---|---|
| Basement | | | | Floors | | | | Sidewalks | | |
| Ceilings | | | | Foundation / Slab(s) | | | | Walls / Fences | | |
| Doors | | | | Interior Walls | | | | Windows | | |
| Driveways | | | | Lighting Fixtures | | | | Other Structural Components | | |
| Electrical Systems | | | | Plumbing Systems | | | | | | |
| Exterior Walls | | | | Roof | | | | | | |

If the answer to any of the items in Section 2 is yes, explain (attach additional sheets if necessary): _____
_____
_____

**Section 3.** Are you (Seller) aware of any of the following conditions: (Mark Yes (Y) if you are aware and No (N) if you are not aware.)

| Condition | Y | N | | Condition | Y | N |
|-----------|---|---|---|-----------|---|---|
| Aluminum Wiring | | | | Previous Foundation Repairs | | |
| Asbestos Components | | | | Previous Roof Repairs | | |
| Diseased Trees: ☐ oak wilt ☐ | | | | Other Structural Repairs | | |
| Endangered Species/Habitat on Property | | | | Radon Gas | | |
| Fault Lines | | | | Settling | | |
| Hazardous or Toxic Waste | | | | Soil Movement | | |
| Improper Drainage | | | | Subsurface Structure or Pits | | |
| Intermittent or Weather Springs | | | | Underground Storage Tanks | | |
| Landfill | | | | Unplatted Easements | | |
| Lead-Based Paint or Lead-Based Pt. Hazards | | | | Unrecorded Easements | | |
| Encroachments onto the Property | | | | Urea-formaldehyde Insulation | | |
| Improvements encroaching on others' property | | | | Water Penetration | | |
| Located in 100-year Floodplain | | | | Wetlands on Property | | |
| Located in Floodway | | | | Wood Rot | | |
| Present Flood Ins. Coverage (if yes, attach TAR-1414) | | | | Active Infestation of termites or other wood destroying insects (WDI) | | |
| Previous Flooding into the Structures | | | | Previous treatment for termites or WDI | | |
| Previous Flooding onto the Property | | | | Previous termite or WDI damage repaired | | |
| Located in Historic District | | | | Previous Fires | | |
| Historic Property Designation | | | | Termite or WDI damage needing repair | | |
| Previous Use of Premises for Manufacture of Methamphetamine | | | | Single Blockable Main Drain in Pool/Hot Tub/Spa* | | |

(TAR-1406) 01-01-14   Initialed by: Buyer: [MC] _____ and Seller: _____   Page 2 of 5

DocuSign Envelope ID: EBCAE6EE-98AE-4B27-883A-836C757B1037

Concerning the Property at _____   **1714 Driscoll St.**
_____   **Houston, TX  77019**

If the answer to any of the items in Section 3 is yes, explain (attach additional sheets if necessary): _____
_____
_____
_____
_____

*A single blockable main drain may cause a suction entrapment hazard for an individual.

**Section 4.** Are you (Seller) aware of any item, equipment, or system in or on the Property that is in need of repair, which has not been previously disclosed in this notice? ☐ yes ☒ no  If yes, explain (attach additional sheets if necessary): _____
_____
_____
_____

**Section 5.** Are you (Seller) aware of any of the following (Mark Yes (Y) if you are aware. Mark No (N) if you are not aware.)

Y  N

☐ ☒ Room additions, structural modifications, or other alterations or repairs made without necessary permits or not in compliance with building codes in effect at the time.

☐ ☒ Homeowners' associations or maintenance fees or assessments. If yes, complete the following:
Name of association: _____
Manager's name: _____ Phone: _____
Fees or assessments are: $_____ per _____ and are: ☐ mandatory  ☐ voluntary
Any unpaid fees or assessment for the Property? ☐ yes ($_____) ☐ no
If the Property is in more than one association, provide information about the other associations below or attach information to this notice.

☐ ☒ Any common area (facilities such as pools, tennis courts, walkways, or other) co-owned in undivided interest with others. If yes, complete the following:
Any optional user fees for common facilities charged? ☐ yes ☐ no  If yes, describe: _____
_____

☐ ☒ Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property.

☐ ☒ Any lawsuits or other legal proceedings directly or indirectly affecting the Property. (Includes, but is not limited to: divorce, foreclosure, heirship, bankruptcy, and taxes.)

☐ ☒ Any death on the Property except for those deaths caused by: natural causes, suicide, or accident unrelated to the condition of the Property.

☐ ☒ Any condition on the Property which materially affects the health or safety of an individual.

☐ ☒ Any repairs or treatments, other than routine maintenance, made to the Property to remediate environmental hazards such as asbestos, radon, lead-based paint, urea-formaldehyde, or mold.
If yes, attach any certificates or other documentation identifying the extent of the remediation (for example, certificate of mold remediation or other remediation).

☐ ☒ Any rainwater harvesting system located on the property that is larger than 500 gallons and that uses a public water supply as an auxiliary water source.

☐ ☒ The Property is located in a propane gas system service area owned by a propane distribution system retailer.

(TAR-1406) 01-01-14    Initialed by: Buyer: _____, _____  and Seller: _____, _____    Page 3 of 5

DocuSign Envelope ID: E8CAE6EE-68AE-4B27-883A-836C75781037

Concerning the Property at _____ **1714 Driscoll St.**
**Houston, TX 77019**

If the answer to any of the items in Section 5 is yes, explain (attach additional sheets if necessary): _____
_____
_____
_____
_____

**Section 6.** Seller ☐ has ☐ has not attached a survey of the Property.

**Section 7.** Within the last 4 years, have you (Seller) received any written inspection reports from persons who regularly provide inspections and who are either licensed as inspectors or otherwise permitted by law to perform inspections? ☐ yes ☐ no If yes, attach copies and complete the following:

| Inspection Date | Type | Name of Inspector | No. of Pages |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

*Note: A buyer should not rely on the above-cited reports as a reflection of the current condition of the Property. A buyer should obtain inspections from inspectors chosen by the buyer.*

**Section 8.** Check any tax exemption(s) which you (Seller) currently claim for the Property:

☐ Homestead ☐ Senior Citizen ☐ Disabled
☐ Wildlife Management ☐ Agricultural ☐ Disabled Veteran
☐ Other: _____ ☒ Unknown

**Section 9.** Have you (Seller) ever filed a claim for damage to the Property with any insurance provider? ☐ yes ☒ no

**Section 10.** Have you (Seller) ever received proceeds for a claim for damage to the Property (for example, an insurance claim or a settlement or award in a legal proceeding) and not used the proceeds to make the repairs for which the claim was made? ☐ yes ☒ no If yes, explain: _____
_____
_____

**Section 11.** Does the property have working smoke detectors installed in accordance with the smoke detector requirements of Chapter 766 of the Health and Safety Code?* ☒ unknown ☐ no ☐ yes. If no or unknown, explain. (Attach additional sheets if necessary): _____
_____
_____

*\*Chapter 766 of the Health and Safety Code requires one-family or two-family dwellings to have working smoke detectors installed in accordance with the requirements of the building code in effect in the area in which the dwelling is located, including performance, location, and power source requirements. If you do not know the building code requirements in effect in your area, you may check unknown above or contact your local building official for more information.*

*A buyer may require a seller to install smoke detectors for the hearing impaired if: (1) the buyer or a member of the buyer's family who will reside in the dwelling is hearing-impaired; (2) the buyer gives the seller written evidence of the hearing impairment from a licensed physician; and (3) within 10 days after the effective date, the buyer makes a written request for the seller to install smoke detectors for the hearing-impaired and specifies the locations for installation. The parties may agree who will bear the cost of installing the smoke detectors and which brand of smoke detectors to install.*

DocuSign Envelope ID: EBCAE8EE-98AE-4B27-883A-636C757B1037

Concerning the Property at _____  1714 Driscoll St.
_____  Houston, TX  77019

Seller acknowledges that the statements in this notice are true to the best of Seller's belief and that no person, including the broker(s), has instructed or influenced Seller to provide inaccurate information or to omit any material information.

Signature of Seller _____ Date _____ Signature of Seller _____ Date
Printed Name: Eva Engelhart, Court Appointed    Printed Name: Receiver

## ADDITIONAL NOTICES TO BUYER:

(1) The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain zip code areas. To search the database, visit www.txdps.state.tx.us ; For information concerning past criminal activity in certain areas or neighborhoods, contact the local police department.

(2) If the property is located in a coastal area that is seaward of the Gulf Intracoastal Waterway or within 1,000 feet of the mean high tide bordering the Gulf of Mexico, the property may be subject to the Open Beaches Act or the Dune Protection Act (Chapter 61 or 63, Natural Resources Code, respectively) and a beachfront construction certificate or dune protection permit may be required for repairs or improvements. Contact the local government with ordinance authority over construction adjacent to public beaches for more information.

(3) If you are basing your offers on square footage, measurements, or boundaries, you should have those items independently measured to verify any reported information.

(4) The following providers currently provide service to the property:

Electric: _____ phone #: _____
Sewer: _____ phone #: _____
Water: _____ phone #: _____
Cable: _____ phone #: _____
Trash: _____ phone #: _____
Natural Gas: _____ phone #: _____
Phone Company: _____ phone #: _____
Propane: _____ phone #: _____

(6) This Seller's Disclosure Notice was completed by Seller as of the date signed. The brokers have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY.

The undersigned Buyer acknowledges receipt of the foregoing notice.

DocuSigned by:
Mike Croix                                6/20/2014
Signature of Buyer                        Date  Signature of Buyer                        Date
Printed Name: Croix Custom Homes          Printed Name: _____

(TAR-1406) 01-01-14

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

1714 Driscoll St

STATE OF TEXAS
COUNTY OF HARRIS

I, Chris Daniel, District Clerk of Harris County, Texas, certify that
this is a true and correct copy of the original record filed and or recorded
in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this

CHRIS DANIEL, DISTRICT CLERK
HARRIS COUNTY, TEXAS

_____ Deputy

DocuSign Envelope ID: 8DDEC288-4623-478B-84C8-8567173864E5



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)　　12-05-2011

# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT

_____1714 Driscoll St._____Houston_____
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

☒ (1) The Sales Price in Paragraph 3 of the contract is:
　　A. Cash portion of Sales Price payable by Buyer at closing . . . . . . . . . . $_____
　　B. Sum of financing described in the contract. . . . . . . . . . . . . . . . . . . . . $_____540,000.00
　　C. Sales Price (Sum of A and B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____540,000.00
☐ (2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:




☐ (3) The date in Paragraph 9 of the contract is changed to _____,_____.
☐ (4) The amount in Paragraph 12A(1)(b) of the contract is changed to $_____.
☐ (5) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $_____ by Seller; $_____ by Buyer.
☐ (6) Buyer has paid Seller an additional Option Fee of $_____ for an extension of the unrestricted right to terminate the contract on or before _____. This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.
☐ (7) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.
☐ (8) The date for Buyer to give written notice to Seller that Buyer cannot obtain Credit Approval as set forth in the Third Party Financing Condition Addendum for Credit Approval is changed to _____,_____.
☐ (9) Other Modifications: (Insert only factual statements and business details applicable to this sale.)

EXECUTED the _____ day of _____,_____. (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

DocuSigned by:
Mike Croix
_____
Buyer Croix Custom Homes, Inc.　　　　Seller _____


Buyer _____　　　　Seller _____

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC No. 39-7. This form replaces TREC No. 39-6.

(TAR-1903) 12-05-2011

Page 1 of 1

Keller Williams Realty, 550 Post Oak Blvd. Houston, TX 77007
Phone: 713.569.5839　　　Fax: 713.559.8507　　　Patricia Dajani
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026　www.ziplogix.com

1714 DRISCOLL

DocuSign Envelope ID: C2071828-4812-4FBA-B2AA-ABE392A93E23



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)          12-05-2011

# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT

_____ **1714 Driscoll St.** _____·_____ **Houston** _____
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

☐ (1) The Sales Price in Paragraph 3 of the contract is:
    A. Cash portion of Sales Price payable by Buyer at closing ........... $_____
    B. Sum of financing described in the contract..................... $_____
    C. Sales Price (Sum of A and B) ................................. $_____

☐ (2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:

☒ (3) The date in Paragraph 9 of the contract is changed to _____ **October 31** _____, **2014** .

☐ (4) The amount in Paragraph 12A(1)(b) of the contract is changed to $ _____ .

☐ (5) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.

☐ (6) Buyer has paid Seller an additional Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before _____ . This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.

☐ (7) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.

☐ (8) The date for Buyer to give written notice to Seller that Buyer cannot obtain Credit Approval as set forth in the Third Party Financing Condition Addendum for Credit Approval is changed to _____ , _____ .

☐ (9) Other Modifications: (Insert only factual statements and business details applicable to this sale.)

EXECUTED the _____ day of _____ 9/30/2014 _____ , _____ . (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_Mike Cron_
Buyer Croix Custom Homes

Seller Eva Engelhart, Court Appointed

_____
Buyer

Seller Receiver

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC No. 39-7. This form replaces TREC No. 39-6.

(TAR-1903) 12-05-2011

SHORE Gary Greene- Bay Area. 17250 El Camino Real Houston, TX 77058
Phone: 281.486.1900          Fax: 281.486.9201          Joanne Roemer
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Page 1 of 1

1714 Driscoll St

APPENDIX TAB C

Appellees Notice of Appeal

| | |
|---|---|
| WILLIAM G. WEST, AS CHAPTER 7 § TRUSTEE OF RICHARD DAVIS, DEBTOR§ Plaintiff, § | IN THE DISTRICT COURT OF |
| § | |
| VS. § | HARRIS COUNTY, TEXAS |
| § | |
| PHILIPPE TANGUY, 13500 AIR § EXPRESS, L.L.C., AND 13500 § AIR EXPRESS, L.P., § Defendants. § | |
| § | |
| v. § | |
| § | |
| PTRE HOLDINGS, L.P. § Intervenor § | 270TH JUDICIAL DISTRICT |

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that the Defendants, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., AND 13500 AIR EXPRESS, L.P., and Intervenor, PTRE Holdings, L.P., hereby appeal the Order Granting Sale of Property signed October 10, 2014 which this Court entered on the 10th day of October, 2014 at the request of the Plaintiff, William G. West, Trustee, to the First or Fourteenth Court of Appeals at Houston, Texas. There are already two related pending appeals in the First Court of Appeals in Case No. 01-14-00455-CV. Defendants and Intervenor state the following:

1. The Trial Court is the 270th Judicial District Court of Harris County, Texas.

2. The Judge of the Trial Court is the Honorable Brent Gamble.

3. The Order being appealed was signed on the 10th day of October, 2014.

4. Defendants, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., 13500 AIR EXPRESS, L.P., and Intervenor, PTRE Holdings, L.P.,

1

APPENDIX C

desire to appeal.

5. Appellants believe that the appeal is taken to the Court of Appeals for the First Supreme Judicial District of Texas at Houston, Texas.

6. Defendants, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., 13500 AIR EXPRESS, L.P., and Intervenor, PTRE Holdings, L.P., are the parties taking the appeal and filing the notice.

Respectfully submitted,

s/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.
Attorney for Defendant and
Judgment Debtor
TBC # 10443500
5222 Spruce Street
Bellaire, Texas 77401
(713) 668-8815
(713) 668-9402 FAX
jizen@comcast.net

s/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.
Attorney for Intervenor,
PTRE Holdings, L.P.
TBC # 10443500
5222 Spruce Street
Bellaire, Texas 77401
(713) 668-8815
(713) 668-9402 FAX
jizen@comcast.net

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent to Eva Engelhart, Receiver, 2 Riverway #700, Houston, TX 77056-1918 (713-623-6014 FAX) and Joshua W. Wolfshohl, Porter and Hedges, 1000 Main Street, 36th Floor, Houston, TX 77002 by facsimile transmission (713) 226-6231 Fax and/or U.S. Mail, postage prepaid, on this the 30th day of October, 2014.

s/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.

2

| | | |
|---|---|---|
| WILLIAM G. WEST, AS CHAPTER 7 TRUSTEE OF RICHARD DAVIS, DEBTOR | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| VS. | § § | HARRIS COUNTY, TEXAS |
| PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., AND 13500 AIR EXPRESS, L.P., | § § § § | |
| Defendants. | § § | |
| v. | § § | |
| PTRE HOLDINGS, L.P. | § § | |
| Intervenor | § | 270TH JUDICIAL DISTRICT |

## DEFENDANTS, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., 13500 AIR EXPRESS, L.P.'S AND INTERVENOR, PTRE HOLDINGS, L.P.'S, REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW

TO THE HONORABLE JUDGE OF SAID COURT:

DEMAND IS HEREBY MADE pursuant to Rule 296 of the Texas Rules of Civil Procedure that this Court prepare and file Findings of Fact and Conclusions of Law in support of its previous Judgment or order in this case signed October 10, 2014 and filed by the District Clerk on October 10, 2014. Demand is being made for the preparation and filing of such Findings of Fact and Conclusions of Law within twenty days of the signing of the Judgment as required by said Rule.

A copy of this demand is being provided to all parties and/or counsel of record.

Respectfully submitted,

S/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.
Attorney for Defendant and
Judgment Debtor
TBC # 10443500
5222 Spruce Street
Bellaire, Texas 77401
(713) 668-8815
(713) 668-9402 FAX
jizen@comcast.net


s/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.
Attorney for Intervenor,
PTRE Holdings, L.P.
TBC # 10443500
5222 Spruce Street
Bellaire, Texas 77401
(713) 668-8815
(713) 668-9402 FAX
jizen@comcast.net

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent to Eva Engelhart, Receiver, 2 Riverway #700, Houston, TX 77056-1918 (713-623-6014 FAX) and Joshua W. Wolfshohl, Porter and Hedges, 1000 Main Street, 36th Floor, Houston, TX 77002 by facsimile transmission (713) 226-6231 Fax and/or U.S. Mail, postage prepaid, on October 30, 2014.

S/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.

APPENDIX TAB D

Notice of Appeal of the Sale Order

| Cause #: | 2013-67779 | | Court # | 270TH | Judgment Date: | 10/10/2014 |
|---|---|---|---|---|---|---|
| Volume: | | | Page: | | Image #: | 62791808 |
| Due Date: | 11/9/2014 | | Attorney Bar No: | | 10443500 | |
| Assigned to | 1ST | | Court of Appeals | | | |
| Date Findings of Facts/Mtn of Modify/Mtn New Trial filed? | | | | | 10/30/2014 | |
| Request for Transcript Filed? | | N/A | | | D | |
| Notice of Appeal previously filed? Y | | | | | OA | |
| Number of Days: | 10 | | | | | |
| File Ordered: Imaged | | | | | | |
| Notes: Prev Appellate Case No: 01-14-00455-CV (3RD APPEAL) | | | | | | |

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/31/2014 2:16:39 PM
CHRISTOPHER A. PRINE
Clerk

BC     Notice of Appeal filed
BG     Notice of Appeal filed – Government
C      Appealing Final Judgment
D -    Accelerated Appeal
OA      No Clerk's Record Request filed
O – Clerk's Record Request filed (w/Notice of Appeal)

APPENDIX D

NO. 2013-67779

| | | |
|---|---|---|
| WILLIAM G. WEST, AS CHAPTER 7 TRUSTEE OF RICHARD DAVIS, DEBTOR Plaintiff, | § § § § | IN THE DISTRICT COURT OF |
| VS. | § § | HARRIS COUNTY, TEXAS |
| PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., AND 13500 AIR EXPRESS, L.P., Defendants. | § § § § § § | |
| v. | § § | |
| PTRE HOLDINGS, L.P. Intervenor | § § | 270TH JUDICIAL DISTRICT |

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that the Defendants, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., AND 13500 AIR EXPRESS, L.P., and Intervenor, PTRE Holdings, L.P., hereby appeal the Order Granting Sale of Property signed October 10, 2014 which this Court entered on the 10th day of October, 2014 at the request of the Plaintiff, William G. West, Trustee, to the First or Fourteenth Court of Appeals at Houston, Texas. There are already two related pending appeals in the First Court of Appeals in Case No. 01-14-00455-CV. Defendants and Intervenor state the following:

1. The Trial Court is the 270th Judicial District Court of Harris County, Texas.

2. The Judge of the Trial Court is the Honorable Brent Gamble.

3. The Order being appealed was signed on the 10th day of October, 2014.

4. Defendants, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., 13500 AIR EXPRESS, L.P., and Intervenor, PTRE Holdings, L.P.,

1

desire to appeal.

5. Appellants believe that the appeal is taken to the Court of Appeals for the First Supreme Judicial District of Texas at Houston, Texas.

6. Defendants, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., 13500 AIR EXPRESS, L.P., and Intervenor, PTRE Holdings, L.P., are the parties taking the appeal and filing the notice.

Respectfully submitted,

s/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.
Attorney for Defendant and
Judgment Debtor
TBC # 10443500
5222 Spruce Street
Bellaire, Texas 77401
(713) 668-8815
(713) 668-9402 FAX
jizen@comcast.net

s/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.
Attorney for Intervenor,
PTRE Holdings, L.P.
TBC # 10443500
5222 Spruce Street
Bellaire, Texas 77401
(713) 668-8815
(713) 668-9402 FAX
jizen@comcast.net

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent to Eva Engelhart, Receiver, 2 Riverway #700, Houston, TX 77056-1918 (713-623-6014 FAX) and Joshua W. Wolfshohl, Porter and Hedges, 1000 Main Street, 36th Floor, Houston, TX 77002 by facsimile transmission (713) 226-6231 Fax and/or U.S. Mail, postage prepaid, on this the 30th day of October, 2014.

s/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.

2

```
CASE NUM: 201367779__ PJN> __  TRANS NUM: _____ CURRENT COURT: 270 PUB? _
CASE TYPE: ENFORCE FOREIGN JUDGMENT       CASE STATUS: DISPOSED (FINAL)
STYLE: WEST, WILLIAM G (CHAPTER 7 TRUSTE VS TANGUY, PHILIPPE
==============================================================================
                    **** INACTIVE PARTIES ****
   PJN   PER/CONN COC  BAR      PERSON NAME          PTY    ASSOC. ATTY
   NUM    NUMBER                                    STAT
_      00007-0001 IVD           WEST, WILLIAM
_      00006-0001 IVP 10443500  PTRE HOLDINGS L P             IZEN, JOE ALF
_      00004-0002 XPL 10443500  13,500 AIR EXPRESS LP         IZEN, JOE ALF
_      00003-0002 XPL 10443500  13,500 AIR EXPRESS LLC        IZEN, JOE ALF
_      00002-0002 XPL 10443500  TANGUY, PHILIPPE              IZEN, JOE ALF
_      00001-0002 XDF           WEST, WILLIAM G (CHAPTER 7 TRU
_      00005-0001 RCV 00796513  ENGELHART, EVA SHAFIR
_      00004-0001 DEF 10443500  13,500 AIR EXPRESS LP         IZEN, JOE ALF
_      00003-0001 DEF 10443500  13,500 AIR EXPRESS LLC        IZEN, JOE ALF
_      00002-0001 DEF 10443500  TANGUY, PHILIPPE              IZEN, JOE ALF
_      00001-0001 PLT 24058058  WEST, WILLIAM G (CHAPTER 7 TRU  POWER, AARON


==> (11) CONNECTION(S) FOUND
1=ACTIVE        2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.  5=DOC. INQ.
6=CASE INQ.     7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH    11=HELP
```

APPENDIX TAB E

Appellants Notice of Designation of Additional Items

# JOE ALFRED IZEN, JR.
# IZEN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

### 5222 SPRUCE STREET - BELLAIRE, TEXAS 77401
(713) 668-8815 Telephone / (713) 668-9402 Fax

December 29, 2014

Chris Daniel
Harris County District Clerk
P. O. Box 4651
Houston, Texas 77210

RE: No. 2013-67779; <u>William</u> <u>G.</u> <u>as</u> <u>Chapter</u> <u>7</u> <u>Trustee</u> <u>of</u> <u>Richard</u>
<u>Davis,</u> <u>Debtors,</u> <u>v.</u> <u>Philippe</u> <u>Tanguv,</u> <u>Et</u> <u>Al</u>, Designation of
Additional Items to Be Included in Record on Appeal; Request
for Court Reporter's Record

Dear Sir:

Attached is a copy of the District Clerk's Docket Sheet in
the above-styled and numbered cause. The items circled are the
items Appellant designates as items to be included in the Clerk's
Record on Appeal. Request is hereby made that the Official Court
Reporter of the 270th Judicial District Court that took the notes
at the Motion to Sell Real Property hearing on October 10, 2014,
prepare a Court Reporter's record of such hearing for purposes of
appeal. We request an estimate and will forward a requested
deposit.

Sincerely,

Joe Alfred Izen, Jr.

JAI:kc
cc: Eva Engelhart
    Joshual Wolfshol

TANWEHC3Y.DOR/TK471

1

# APPENDIX E

**HCDistrictclerk.com**  WEST, WILLIAM G (CHAPTER 7 TRUSTEE OF THE  12/26/2014
ESTATE O vs. TANGUY, PHILIPPE
Cause: 201367779     CDI: 7     Court: 270

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|--------|----------|-----------|------|-----|
| 63547178 | Certificate of Conference | | 12/17/2014 | 1 |
| 63637915 | ORDER SIGNED GRANTING ENTRY OF TEMPORARY ORDERS | | 12/16/2014 | 2 |
| 63366811 | Proposed Order to Turnover Log Books Provide Access to Non-Exempt Airplane and to Retain Gordon Cragg to Appraise the Airplane | | 12/03/2014 | 3 |
| 63293936 | Notice of Past Due Findings of Fact and Conclusions of Law Pursuant to Rule 297 Texas Rules of Civil Procedure | | 11/24/2014 | 3 |
| 63238137 | Proposed Order to Turnover Log Books and Provide Access to Non-Exempt Airplane and to Retain Gordon Cragg to Appraise the Airplane | | 11/19/2014 | 2 |
| 63153004 | Defendants and Judgment Debtors, Philipe Tanguy,13500 air Express, L.L.C., and 13500 Air Express, L.P.'S Response and Objection to the Receiver's Motion to Compel Turn Over Order of Non-Exempt Airplane and to Retain Gordon Cragg to Appraise and Sell the A | | 11/13/2014 | 9 |
| 63153005 | Exhibit A | | 11/13/2014 | 6 |
| 63153006 | Proposed Order | | 11/13/2014 | 2 |
| 63153007 | Defendants and Judgment Debtors, Philippe Tanguy, 13500 Air Express, L.L.C., and 13500 Air Express, L.P.'S Motion for Continuance of Trial on Receiver's Motion to Compel Turn Over Order of Airplane and Claim for Turn Over Purported Distributions ($2,085.7 | | 11/13/2014 | 5 |
| 63153008 | Exhibit A | | 11/13/2014 | 2 |
| 63153009 | Exhibit B | | 11/13/2014 | 2 |
| 63153010 | Proposed Order | | 11/13/2014 | 2 |
| 63169158 | Affidavit of Defendant, Philippe Tanguy, In Opposition to Receiver's Motions for Charging Order Against Debtor, Philippe Tanguy's Partnership and Membership Interests and Motion to Compel Turn Over of Non-Exempt Airplane and to Retain Gordon Cragg to Appr | | 11/13/2014 | 9 |
| -> 63169159 | EXHIBIT A | | 11/13/2014 | 1 |
| -> 63169160 | EXHIBIT B | | 11/13/2014 | 1 |
| -> 63169161 | EXHIBIT C | | 11/13/2014 | 1 |
| 63120319 | Defendant-In-Intervention William G. Wests, Chapter 7 Trustee of Richard Davis Original Answer | | 11/10/2014 | 5 |
| 62996972 | Defendants, Philippe Tanguy, 13500 Air express, L.L.C., 13500 Air Express, L.P.S and Intervenor, Ptre Holdings. L.P.S, Request for Findings of Fact and Conclusioons of Law | | 10/30/2014 | 2 |
| 62999297 | notice of appeal | | 10/30/2014 | 2 |
| 62856928 | Second Amended Notice of Hearing | | 10/21/2014 | 2 |
| 62735373 | Amended Notice of Hearing | | 10/13/2014 | 2 |
| 62708047 | Defendant and Plaintiff-in-Intervention's PTRE Holdings, L.P.'S Objection to Receiver's Request for Emergency Consideration and (Proposed) Third Amended Order to Sell Real Property at 1714 Driscoll Street | | 10/10/2014 | 5 |
| 62708048 | Proposed | | 10/10/2014 | 1 |
| 62791808 | ORDER SGND GRANTING SALE OF PROPERTY | | 10/10/2014 | 19 |
| 62674119 | Proposed Third Amended Order to sell property at 1714 Driscoll St. | | 10/08/2014 | 2 |
| 62674120 | Exhibit C | | 10/08/2014 | 17 |
| 62674330 | Supplemental Affidavit to Motion to Sell Real Property of 1714 Driscoll St. | | 10/08/2014 | 2 |

| | | | |
|---|---|---|---|
| 62674331 | Exhibit A | 10/08/2014 | 9 |
| 62674332 | Exhibit B | 10/08/2014 | 3 |
| 62674333 | Exhibit C | 10/08/2014 | 17 |
| 62674334 | Exhibit D | 10/08/2014 | 2 |
| 62674857 | Receiver's Motion to Compel Turnover of Non-Exempt Airplane and to Retain Gordon Cragg to Appraise and sell the Airplane | 10/08/2014 | 4 |
| 62674858 | Exhibit A | 10/08/2014 | 9 |
| 62674859 | Affidavit | 10/08/2014 | 2 |
| 62674860 | Exhibit B | 10/08/2014 | 3 |
| 62674861 | Exhibit C | 10/08/2014 | 1 |
| 62674862 | PROPOSED ORDER TO COMPEL TURNOVER OF NON-EXEMPT AIRPLANE AND TO RETAIN GORDONCRAGG TO APPRAISE AND SELL THE AIRPLANE | 10/08/2014 | 2 |
| 62674863 | Notice of Hearing | 10/08/2014 | 2 |
| 62677691 | Receiver's Motion for Charging Order against Debtor, Philipe Tanguy's Partnership and Membership Interests | 10/08/2014 | 4 |
| 62677693 | Exhibit A | 10/08/2014 | 9 |
| 62677694 | Affidavit | 10/08/2014 | 2 |
| 62677696 | Exhibit B | 10/08/2014 | 3 |
| 62677697 | Affidavit | 10/08/2014 | 2 |
| 62677699 | Exhibit C | 10/08/2014 | 3 |
| 62677700 | Exhibit D | 10/08/2014 | 3 |
| 62677701 | Exhibit E | 10/08/2014 | 5 |
| 62677704 | Proposed Charging Order against Debtor, Phillippe Tanguy's Partnership and Membership Interests | 10/08/2014 | 3 |
| 62677705 | Notice of Hearing | 10/08/2014 | 2 |
| 62612274 | Amended Notice of Hearing | 10/03/2014 | 2 |
| 62592888 | Request for Emergency consideration/hearing on the Motion to Sell real Property at 1714 Driscoll St. | 10/02/2014 | 4 |
| 62597587 | court of appeals for the first district of texas at houston order | 10/02/2014 | 6 |
| 62597656 | Exhibit A_10-02-14 | 10/02/2014 | 9 |
| 62597925 | Exhibit B_10-02-14 | 10/02/2014 | 3 |
| 62597974 | Notice of Hearing | 10/02/2014 | 2 |
| 62597986 | LettTanguy West HC Notice of Nonavailibity of Coun | 10/02/2014 | 1 |
| 62598213 | Exhibit C_10-02-14 | 10/02/2014 | 14 |
| 62598219 | Exhibit D_10-02-14 | 10/02/2014 | 2 |
| 62598236 | Proposed Amended Order to Sell Property at 1714 driscoll st. | 10/02/2014 | 17 |
| 61708522 | Defendants' Notice of Filing | 07/24/2014 | 1 |
| 61708523 | Appellants, Philippe Tanguy, 13500 Air Express, L.L.C., and 13500 Air Express, L.P.'S Emergency Motion for Temporary Order Staying Turnover and Receivership Proceeding Pursuant to T.R.A.P Rule 29.3 | 07/24/2014 | 20 |
| 61708525 | Affidavit of Appellant, Philippe Tanguy, In Support of Appellants' Emergency Motion for Temporary Relief Pursuant to T.R.A.P Rule 29.3 | 07/24/2014 | 6 |
| 61710028 | Exhibit A | 07/24/2014 | 14 |
| 61710030 | Exhibit B | 07/24/2014 | 3 |
| 61710031 | Exhibit C | 07/24/2014 | 22 |
| 61714077 | Affidavit | 07/24/2014 | 2 |

| | | | |
|---|---|---|---|
| 61714085 | INTERVENOR, PTRE HOLDINGS, L.P.'S, RESPONSE AND OBJECTION TO RECEIVER, EVA ENGELHARTIS, MOTION TO SELL REAL PROPERTY AT 1714 DRISCOLL STREET AND PROPOSED ORDER AND/OR AMENDED ORDER | 07/24/2014 | 9 |
| 61714086 | Proposed Order | 07/24/2014 | 1 |
| 61714093 | INTERVENOR, PTRE HOLDINGS, L.P.'S, RESPONSE AND OBJECTION TO RECEIVER, EVA ENGELHARTIS, MOTION TO SELL REAL PROPERTY AT 1714 DRISCOLL STREET AND PROPOSED ORDER AND/OR AMENDED ORDER | 07/24/2014 | 4 |
| 61714094 | Proposed Order | 07/24/2014 | 1 |
| 61609174 | NOTICE OF PAST DUE FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO RULE 297 TEXAS RULES OF CIVIL PROCEDURE | 07/16/2014 | 2 |
| 61553449 | Proposed amended Order to sell property at 1714 driscoll st. | 07/11/2014 | 2 |
| -> 61553450 | Exhibit C | 07/11/2014 | 14 |
| 61509888 | Motion to Sell Real Property at 1714 Driscoll St. | 07/09/2014 | 3 |
| 61509889 | Exhibit A | 07/09/2014 | 9 |
| 61509890 | Exhibit B | 07/09/2014 | 3 |
| 61509891 | Exhibit C | 07/09/2014 | 14 |
| 61509892 | Exhibit D | 07/09/2014 | 2 |
| 61509893 | Proposed Order | 07/09/2014 | 2 |
| 61509894 | Notice of Hearing | 07/09/2014 | 2 |
| 61758864 | Court of Appeals First District (postcard) | 07/07/2014 | 1 |
| 61611895 | Court of Appeals First District (postcard) | 07/01/2014 | 1 |
| 61273901 | DEFENDANTS, PHILIPPE TANGUY, 13,500 AIR EXPRESS L.L.C. AND 13,500 AIR EXPRESS L.P.'S, REPLY TO RECEIVER'S RESPONSE TO DEFENDANTS' MOTION TO LEASE PROPERTY AT 1712 AND 1714 DRISCOLL STREET, HOUSTON, TEXAS FOR A TERM LONGER THAN MONTH-TO-MONTH | 06/19/2014 | 1 |
| 61273914 | Defendants Philippe Tanguy, 13,500 Air Express L.L.C And 13,500 Air Express L.PS Reply To Reciever Response To Defendants Motion To Lease Property At 1712 And 1714 Driscoll Street, Houston Texas For A Term Longers Then Month-To- Month | 06/19/2014 | 5 |
| 61449265 | Court of Appeals First District (general information) | 06/19/2014 | 4 |
| 61244676 | Receiver's Response to Defendant's Motion to Lease Receivership Property for Longer than Month-to-Month Tenancy and Motion to Compel Turnover of Documents and Property Pursuant to Court Order Dated May 30, 2014 | 06/18/2014 | 4 |
| 61244682 | Proposed Order to Compel Turnover | 06/18/2014 | 2 |
| 61256949 | DEFENDANTS, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., AND 13500 AIR EXPRESS, L.P. 'S, REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW | 06/18/2014 | 2 |
| 61261600 | Tanguy West HC Notice of Appeal | 06/18/2014 | 2 |
| 61168270 | Filing Letter | 06/12/2014 | 1 |
| 61168574 | Defendant, Phillippe Tanguy's Motion for Court Approval to Lease Receivership Property for Term Longer Than Month-to-Month Tenancy | 06/11/2014 | 4 |
| 61168575 | Exhibit A | 06/11/2014 | 1 |
| 61168576 | Exhibit B | 06/11/2014 | 3 |
| 61168577 | Proposed Order | 06/11/2014 | 1 |
| 61168578 | Notice of Oral Hearing | 06/11/2014 | 1 |
| 61228236 | Court of Appeals First District (general information) | 06/06/2014 | 5 |
| 61065884 | Trial Coordinator Document | 06/02/2014 | 8 |
| 60995173 | DEFENDANTS, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., AND 13500 AIR EXPRESS, L.P.'S OBJECTION TO RECEIVER'S EMERGENCY MOTION TO COMPEL TURNOVER OF NON-EXEMPT PROPERTY, TO RETAIN REAL ESTATE BROKER, AND TO SELL NON-EXEMPT PROPERTY | 05/30/2014 | 6 |

| | | | |
|---|---|---|---|
| 60995174 | EXHIBIT A | 05/30/2014 | 5 |
| 60995175 | PROPOSED ORDER | 05/30/2014 | 1 |
| 61012360 | ORDER SIGNED COMPELLING PRODUCTION | 05/30/2014 | 2 |
| 61028332 | Request Writ of Execution | 05/27/2014 | 1 |
| 60927975 | Notice of Appeal | 05/23/2014 | 2 |
| 60936941 | Emergency Motion to Compel Turnover of Non-Exempt Real Property, to Retain Real Estate Broker and to Sell Non-Exempt Real Property | 05/23/2014 | 4 |
| 60936942 | Exhibit A | 05/23/2014 | 9 |
| 60936943 | Affidavit | 05/23/2014 | 2 |
| 60936944 | Exhibit B | 05/23/2014 | 3 |
| 60936945 | Affidavit | 05/23/2014 | 2 |
| 60936946 | Exhibit C | 05/23/2014 | 1 |
| 60936947 | Proposed Order | 05/23/2014 | 2 |
| 60936948 | Notice of Hearing | 05/23/2014 | 2 |
| 60708547 | Bond of Receiver | 05/07/2014 | 2 |
| 60708549 | Oath of Receiver | 05/07/2014 | 1 |
| 60618695 | ORDER SETTING BOND SIGNED<br>ORDER SIGNED APPOINTING RECEIVER<br>ORDER SIGNED GRANTING MOTION FOR TURNOVER | 04/25/2014<br>04/25/2014<br>04/25/2014 | 8 |
| 60567312 | PETITION IN INTERVENTION OF PTRE HOLDINGS, L.P. | 04/24/2014 | 6 |
| 60487236 | DEFENDANTS AND JUDGMENT DEBTORS, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., AND 13500 AIR EXPRESS, L.P.'S, MOTION FOR CONTINUANCE OF THE TRIAL ON PLAINTIFF'S APPLICATION FOR TURN OVER ORDER AND APPOINTMENT OF RECEIVER AND MASTER | 04/21/2014 | 4 |
| 60487237 | Proposed Order | 04/21/2014 | 1 |
| 60487231 | DEFENDANTS AND (PURPORTED) JUDGMENT DEBTOR, PHILIPPE TANGUY's, NOTICE OF DESIGNATION OF EXEMPT AND NON-EXEMPT ASSETS | 04/18/2014 | 2 |
| 60509764 | DEFENDANTS AND JUDGMENT DEBTORS, PHILIPPE TANGUY, 13500 AIR EXPRESS, L.L.C., AND 13500 AIR EXPRESS, L.P.S, FIRST AMENDED ANSWER AND ORIGINAL COUNTER-CLAIM | 04/17/2014 | 5 |
| 60245479 | ORDER SIGNED SETTING HEARING | 03/27/2014 | 1 |
| 60081956 | proposed order | 03/20/2014 | 1 |
| 60387480 | MOTION TO RESET HEARING ON APPLICATION FOR TURNOVER AFTER JUDGMENT AND FOR APPOINTMENT OF A RECEIVER AND MASTER | 03/20/2014 | 3 |
| 60387483 | Proposed Order to show cause why appication for turnover after judgment and for appointment of a receiver and master should not be granted | 03/20/2014 | 1 |
| 58734703 | Defendants and Judgment Debtors Philippe Tanguy, 13500 Air Express, LLC and 13500 Air Express, L.P.s Jury Demand | 12/13/2013 | 1 |
| 58734706 | Defendant's and Judgment Debtors Jury Demand | 12/13/2013 | 1 |
| 58734711 | Defendants and Judgment debtors Philippe Tanguy, 13500 Air Express LLC and 13500 Air Express, LP's Motion for Referral to Mediation | 12/13/2013 | 3 |
| 58734712 | Proposed Order | 12/13/2013 | 1 |
| 58734713 | Defendants and Judgment debtors Philippe Tanguy, 13500 Air Express LLC and 13500 Air Express, LP's Original Answer | 12/13/2013 | 3 |
| 58734700 | Defendants and Judgment Debtors, Motion for Continuance of Trial on Application for Turnover Order after Judgment and Appointment of Receiver and Master | 12/12/2013 | 5 |
| 58734701 | Proposed Order | 12/12/2013 | 1 |

| 58671321 | DEFENDANTS AND JUDGMENT DEBTORS PHILIPPE TANGUY 13500 AIR EXPRESS LLC AND 13500 AIR EXPRESS LP'S MOTION TO SET ASIDE ORDER DATED NOVEMBER 8, 2013 OR FOR GRANT OF NEW TRIAL AND STAY | 12/09/2013 | 6 |
| 58671322 | Exhibit A | 12/09/2013 | 3 |
| 58671323 | Exhibit B | 12/09/2013 | 88 |
| 58671324 | Proposed Order | 12/09/2013 | 2 |
| 58347318 | ORDER SIGNED SETTING HEARING | 11/15/2013 | 2 |
| 58293800 | Notice of Filing of Bankruptcy Judgment | 11/14/2013 | 3 |
| 58294651 | Application for Turnover After Judgment and for Appointment of a Receiver and Master | 11/14/2013 | 3 |
| -> 58294653 | proposed Order Granting Turnover and Appointing Receiver and Master | 11/14/2013 | 8 |
| -> 58294692 | Proposed Order to Show Cause Why Application for Turnover After Judgment and for Appointment of a Receiver and Master Should Not Be Granted | 11/14/2013 | 2 |
| 58221562 | Judgment | 11/08/2013 | 1 |
| -> 58221563 | Affidavit Of Names And Addresses | 11/08/2013 | 2 |
| -> 58221566 | Filing letter | 11/08/2013 | 1 |
| 58374140 | LETTER ROGATORY ISSUED | 11/08/2013 | 4 |
| 61168271 | WEST, WILLIAM G (CHAPTER7 TRUSTEE OF TH VS TANGUY, PHILIPPE | | 2 |